

Veronica V. Montenegro
Of Counsel

June 21, 2022

**VIA ECF**

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
Brooklyn, New York 11201

Re:  Re:  *In re Nano-X Securities Litigation*, No. 1:21-cv-05517-RPK-PK (the "Action")

Dear Judge Kovner:

We represent the Lead Plaintiff in the above-captioned Action. We write this letter pursuant to Paragraph IV(A)(3) of Your Honor's Individual Rules and in response to Defendants' Pre-Motion Conference Letter. ECF No. 30.

Nano-X Imaging Ltd. ("Nano-X" or "the Company") purports to be a company that designs and produces X-ray source technology. Defendants have represented that the Company is "focused on applying [its] proprietary medical imaging technology to make diagnostic medicine more accessible and affordable across the globe." ECF No. 24 ¶ 2. Since its first initial public offering ("IPO"), the Company has persisted in its claim that it can manufacture an X-ray system (the Nanox.ARC) that is comparable to computerized *tomography* ("CT") scanners *and at a significantly lower cost,* thereby revolutionizing the medical imagining market. *Id.* ¶ 3.

During the Class Period (August 21, 2020 to November 18, 2021), in at least 13 different occasions (*id.* ¶¶ 65-96), Defendants represented that the Nanox.ARC could "achieve the same functionalities as legacy X-ray analog cathodes, while allowing for lower-cost production," (*id.* ¶ 84), that Nano-X "plan[ned] to market and deploy the Nanox System broadly across the globe at a substantially lower cost compared to currently available medical imaging systems, such as computed tomography ("CT")" (*id.* ¶ 66) and repeatedly provided a cost range of "approximately $8,000 to $12,000," while comparing the Nanox.ARC's cost to the cost of a "high-end CT scanner for $1,355,000." *Id.* These statements were plainly false and/or misleading because the actual cost to assemble the Nanox.ARC is likely to be at least $40,000 to $50,000 and regardless of cost, the Nanox.ARC is not comparable to existing CT imaging. *Id.* ¶ 67. The Nanox.ARC cannot perform tomography—despite Defendants' various misrepresentations to that effect—and in their letter, dated June 12, 2022, Defendants admit as much. ECF No. 30 at 2.

On November 17, 2021, the Company revealed that it had received a subpoena from the Securities and Exchange Commission ("SEC") "relating to the development cost of the Company's Nanox.ARC prototypes," and "the Company's estimate for the cost of assembling the final Nanox.ARC product at scale." *Id.* ¶ 6. On November 18, 2021, an analyst posited that the SEC

subpoena concerned the Company's representation that it could manufacture the Nano-X tube at $100 and the Nanox.ARC at $10,000. *Id.* ¶ 8. On these revelations, the stock price declined 7.96% and 5%, respectively. *Id.* ¶¶ 7, 9. To date, the Nanox.ARC device has not been approved by the Food and Drug Administration.

### The Amended Complaint Sufficiently Pleads an Actionable Misrepresentation

*First*, Defendants argue that the cost allegations are insufficient because Lead Plaintiff "does not allege a quoted cost for these parts *at scale.*" ECF No. 30 at 2. (emphasis in original). However, the Amended Complaint sufficiently describes the parts cost breakdown for the real approximate cost of assembling the Nanox.ARC. *See* ECF No. 24 ¶¶ 55-58. And, in any event, Defendants attributed the lower cost of manufacturing the Nanox.ARC to the cost of mass-manufacturing the Nano-X tube—not the Company's ability to obtain other part components "at scale." *See, e.g., id.* ¶ 80 (Defendant Poliakine stated, "[t]he cost associated with the source [] is dramatically less [] because it's mass-produced semiconductors that we estimate to be less than $100 in mass production versus $150,000 for average cost of a similar X-ray tube . . .").

*Second,* Defendants claim that they never meant to mislead investors into thinking that the Nanox.ARC could perform the same functions as the CT scanner because when describing their "*first version*" of their Nanox.ARC, in the first page of their IPO Registration Statement, they described the product as performing *tomosynthesis* only (ECF No. 30 at 2) whereas the CT scanner performs *tomography*, which has greater image resolution and clarity capabilities. For starters, it is clear that by "first version," Defendants were referring to the single-source product, i.e., the Nanox.CART, approved by the FDA in April 2021and which only performs tomosynthesis. There is not dispute here. It is the Company's second product, the multi-source Nanox.ARC version, that has been represented as being comparable to the CT scanner, with statements such as:

> [i]f cleared, we plan to market and deploy the Nanox System globally at a **substantially lower cost than currently available medical imaging systems, such as computed tomography ("CT"), because our digital X-ray source will allow the Nanox.ARC to have a simpler structure without the costly cooling equipment or the complex rotating mechanism** used in legacy CT devices. . . .

*See, e.g.,* ECF No. 24 ¶ 66. Furthermore, in addition to the various times during the Class Period where Defendants compare the two, as recent as March 2022, the Company's CFO described the Nanox.ARC as being able to perform tomography. *See* Ex. 1 at 3 ("So, what is the Nanox.ARC? The Nanox.ARC is the tomographic and solid state of the ARC X-ray system which is intended to capture tomographic slices of the human body in one signal tomographic sweep . . .").

### The Alleged Misrepresentations are Not Forward-Looking Statements

The alleged misrepresentations concerning the cost of assembling the Nanox.ARC are not forward-looking statements. The cost provided by Defendants (between $8,000 and $12,000, or $10,000) was false and known to be so by Defendants when made. For example, the cost of a suitable digital detector—the costliest component—is known to be anywhere between $35,000 to $70,000. ECF No. 24 ¶ 58. *See Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y.

1999) ("[N]o degree of cautionary language will protect material misrepresentations or omissions where defendants knew their statements were false when made.").

**The Alleged Misrepresentations are Neither Puffery nor Opinion Statements**

Defendants argue that certain language "touting the product as 'novel,' a 'game-changer' or taking the technology 'generations forward' are clearly puffery and are thus not actionable." (ECF No. 30 at 2). However, this is just background to the actionable portions of the misstatements, i.e., the alleged comparability of the Nanox.ARC to the CT scanner and at a much lower cost per product. *See id.* ECF No. 24 ¶¶ 67, 69, 81, 85, 89. The cited language does not form part of Lead Plaintiff's claims.

**The Amended Complaint Sufficiently Pleads a Regulation S-K Violation**

The Amended Complaint provides the facts and legal argumentation demonstrating that the alleged conditions constituted cognizable trends, uncertainties, or risks required to be disclosed. *See id.* ¶¶ 63-64. Namely, the fact that the Company could not produce a product (and still has not) that is comparable to the CT scanner, much less at the lower cost it repeatedly misrepresented, represents a "known trend" and "significant risk" (existing since the IPO Registration Statement) which: (i) the Company could expect to have an unfavorable impact in its continuing operations; and (ii) made the offering speculative and/or risky.

**The Amended Complaint Sufficiently Pleads Scienter**

"[S]cienter can be established by alleging facts to show . . . strong circumstantial evidence of conscious misbehavior or recklessness." *ECA Loc. 134 IBEW Jt. Pension Tr. of Chicago,* 553 F.3d 187, 198 (2d Cir. 2009). Among other reasons, the Amended Complaint explains that "because the capabilities of the Nanox.ARC differ substantially from those of the CT scanner," (ECF No. 24 at ¶ 106) and because "the various parts necessary to assemble the Nanox.ARC, including a digital detector, would cost, in the aggregate at the very least $40,000 to $50,000" (*id.* at ¶ 107), the Company had no basis to make the claims it did regarding cost and comparability of its product to the CT scanner. *See also id.* ¶¶ 48-62, 102-141.

**The Amended Complaint Sufficiently Pleads Loss Causation**

To establish loss causation, Lead Plaintiff must "demonstrat[e] that 'the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered.'" *In re Vivendi, S.A. Sec. Litig.,* 838 F.3d 223, 261 (2d Cir. 2016) (emphasis in original). Here, it is clear that the Nanox.ARC's lack of market competitiveness with the CT scanner—revealed by the SEC's subpoena inquiring into the cost to assemble the product at scale—plausibly first revealed to the market that the Nanox.ARC was not as represented by the Company. Courts have found that announcements of investigations may qualify as corrective disclosures. *See, e.g., In re Evolus Inc. Sec. Litig.,* 2021 U.S. Dist. LEXIS 177575, at *13 (S.D.N.Y. Sep. 17, 2021).[1]

---

[1] Lead Plaintiff sufficiently pleads control person liability under Section 20(a) because the Amended Complaint sufficiently pleads a Section 10(b) claim. Lead Plaintiff has adequately alleged culpable participation with respect to the Individual Defendants, because it has adequately

Respectfully Submitted,

*s/ Veronica V. Montenegro*
Veronica V. Montenegro

cc:     Marc I. Gross, Esq.
        All Counsel of Record (by ECF)

---

alleged scienter (*see* ECF No. 24 ¶¶ 48-62, 102-141) and "[a]llegations sufficient to plead scienter for the purposes of primary liability pursuant to Section 10(b) 'necessarily satisfy' the culpable participation pleading requirement for Section 20(a) claims." *Richman* v. *Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 284 (S.D.N.Y. 2012).