UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NANO-X SECURITIES LITIGATION | Case No.  1:21-cv-05517-RPK-PK<br><br>**ECF CASE**<br>**Electronically Filed**<br><br>**Oral Argument Requested**<br><br>**Date of Service: September 9, 2022** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE DEFENDANTS' MOTION TO DISMISS THE AMENDED
CLASS ACTION COMPLAINT OF LEAD PLAINTIFF DAVIAN HOLDINGS LIMITED**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................ iii

ARGUMENT ...............................................................................................................................1

I.      PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR
        OMISSION ......................................................................................................................1

        A.      Plaintiff Fails to Allege the Company's Cost Estimates Were False .......................1

        B.      Plaintiff Fails to Allege that Statements Regarding the ARC's Capabilities
                Were False or Misleading ....................................................................................2

        C.      The Allegedly False and Misleading Statements Are Protected by the
                PSLRA Safe Harbor and the Bespeaks Caution Doctrine .....................................6

        D.      Opinion Statements Are Not Actionable ...............................................................9

        E.      General Statements of Puffery and Expressions of Corporate Optimism
                Are Not Actionable .............................................................................................9

        F.      Plaintiff Fails to Plead a Violation of Regulation S-K .........................................10

II.     PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER .................10

III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ..................................................14

CONCLUSION...........................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) ......................................................................................11

*In re Alliance Pharmaceutical Corp. Securities Litigation*,
   279 F. Supp. 2d 171 (S.D.N.Y. 2003) .........................................................................8

*In re Almost Family, Inc. Securities Litigation*,
   No. 3:10-CV-00520-H, 2012 WL 443461 (W.D. Ky. Feb. 10, 2012) ..............................15

*Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*,
   No. 03 Civ. 0971(RCC), 2004 WL 51224 (S.D.N.Y. Jan. 9, 2004) ...................................5

*In re Atlas Air Worldwide Holdings, Inc. Securities Litigation*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004)........................................................................14

*In re Barrick Gold Corp. Securities Litigation*,
   341 F. Supp. 3d 358 (S.D.N.Y. 2018).........................................................................7

*Board of Trustees of Ft. Lauderdale General Employees' Retirement System v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*,
   475 F. App'x 353 (2d Cir. 2012) ...............................................................................14

*Campo v. Sears Holdings Corp.*,
   371 F. App'x 212 (2d Cir. 2010) ...............................................................................15

*Canez v. Intelligent Sys. Corp.*,
   No. 19 Civ. 3949 (RPK) (CLP), 2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021) ..............15

*City of Livonia Employees' Retirement System v. Wyeth*,
   No. 07 Civ. 10329(RJS), 2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010)........................13

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(THK), 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013)...................8

*Cohen v. Koenig*,
   25 F.3d 1168 (2d Cir. 1994)......................................................................................8

*Costanzo v. DXC Technology Co., et al.*,
   No. 19 Civ. 05794(BLF), 2021 WL 5908385 (N.D. Cal. Dec. 14, 2021) .........................7

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009).................................................................................10, 11

*In re Ferrellgas Partners, L.P., Securities Litigation*,
　　No. 16 Civ. 7840 (RJS), 2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ...............................1

*Fogarazzo v. Lehman Bros., Inc.*
　　341 F.Supp.2d 274 (S.D.N.Y. 2004)...................................................................................15

*Gauquie v. Albany Molecular Research, Inc.*,
　　No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016)...................13

*In re HEXO Corp. Securities Litigation*,
　　524 F. Supp. 3d 283 (S.D.N.Y. 2021)..................................................................................10

*Indiana Public Retirement System v. Pluralsight, Inc.*,
　　No. 21-4058, 2022 WL 3591140 (10th Cir. Aug. 23, 2022) ..............................................10

*Janbay v. Canadian Solar Inc.*,
　　No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) .........................13

*Jefferson Insurance Co. v. Rouhana (In re Winstar Communications Securities*
　　*Litigation)*,
　　No. 01 CV 11522, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) .........................................15

*Kalnit v. Eichler*,
　　264 F.3d 131 (2d Cir. 2001)................................................................................................13

*KBC Asset Management NV v. 3D Systems Corp.*,
　　No. 0:15-CV-02393-MGL, 2016 WL 3981236 (D.S.C. July 25, 2016)............................13

*Lachman v. Revlon, Inc.*,
　　487 Supp. 3d 111 (E.D.N.Y. 2020) ...................................................................................13

*Lentell v. Merrill Lynch & Co.*,
　　396 F.3d 161 (2d Cir. 2005).................................................................................................14

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
　　797 F.3d 160 (2d Cir. 2015).................................................................................................12

*Luo v. Sogou, Inc.*,
　　465 F. Supp. 3d 393 (S.D.N.Y. 2020)....................................................................................4

*Massachusetts Retirement Systems v. CVS Caremark Corp.*,
　　716 F.3d 229 (1st Cir. 2013)................................................................................................15

*Meyer v. Greene*,
　　710 F.3d 1189 (11th Cir. 2013) ..........................................................................................14

*In re Nortel Networks Corp. Securities Litigation*,
　　238 F. Supp. 2d 613 (S.D.N.Y. 2003)...................................................................................1

iv

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015)............................................................................................................9

*In re Omnicom Group, Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)...........................................................................................15

*P. Stolz Family Partnership L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)...............................................................................................7

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
    681 F.3d 114 (2d Cir. 2012)...........................................................................................10

*In re Regeneron Pharmaceuticals, Inc. Securities Litigation*,
    No. 03 Civ.3111 RWS, 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005) ..................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................................11

*In re UBS AG Securities Litigation*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub
    nom. City of Pontiac Policemen's & Firemen's Retirement Systems v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..............................................................................................9

*In re Weight Watchers International Inc. Securities Litigation*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020)...............................................................................8

*Welgus v. TriNet Grp., Inc.*,
    No. 15 Civ. 03625 BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd sub
    nom.* 765 F. App'x 239 (9th Cir. 2019)...........................................................................13

*Zola v. TD Ameritrade, Inc.*,
    172 F. Supp. 3d 1055 (D. Neb. 2016), *aff'd*, 889 F.3d 920 (8th Cir. 2018)......................13

## STATUTES

15 U.S.C. § 78o.................................................................................................................15

15 U.S.C. § 78t(a) .............................................................................................................15

15 U.S.C. § 78u-4(b)...........................................................................................................1

15 U.S.C. § 78u-4(b)(1) ......................................................................................................2

## RULES

Federal Rule of Civil Procedure 9(b)..................................................................................1

## REGULATIONS

17 C.F.R. pt. 229 ...................................................................................................10

## OTHER AUTHORITIES

H.R. Rep. No. 104-369 (1995),
    *as reprinted* in 1995 U.S.C.C.A.N. 730 ...............................................................7

## ARGUMENT

### I.    PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION

Referring only to notice pleading rules (Opp.[1] at 7-8), Plaintiff ignores the heightened pleading standards of Rule 9(b) and the PSLRA (Br. at 9), which even its own cases show apply here. *See, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 621 (S.D.N.Y. 2003). Plaintiff must (a) identify each allegedly misleading statement, (b) explain *why* the statement is misleading, and (c) because its allegations are on information and belief, allege with particularity all of the facts supporting its belief. The AC does not meet these requirements.

### A.    Plaintiff Fails to Allege the Company's Cost Estimates Were False

Plaintiff argues that the AC "alleges specific facts showing the ARC cannot be manufactured at such a low cost," but the *only* "fact" it cites is its allegation that the CART uses a detector that costs $20,000, from which it speculates that the ARC will require an even *more* expensive detector. (Opp. at 9.) But as Defendants explained (Br. at 8; *see also* Ex. 6 at 6; Ex. 3 at 4), Plaintiff does not allege that the CART was intended to be a mass-produced commercial device at the time of its FDA submission. To the contrary, Defendants disclosed that the ARC would be its first mass-produced and marketed commercial system. (*See, e.g.*, Ex. 1 at 1.) Plaintiff alleges no facts supporting its belief that the ARC would require the same, let alone a more expensive detector. *See In re Ferrellgas Partners, L.P., Sec. Litig.,* No. 16 CIV. 7840 (RJS), 2018 WL 2081859, at *14 (S.D.N.Y. Mar. 30, 2018) ("conclusory" allegation that failed

---

[1] Defined terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint of Lead Plaintiff Davian Holdings Limited ("Opening Brief" or "Br.") unless otherwise noted. The Amended Complaint is herein referred to as the "AC" and the Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint is referred to as "Opposition" or "Opp." "Ex." refers to the exhibits submitted with the Declaration of Christopher P. Malloy in Support of the Motion to Dismiss the Amended Class Action Complaint. "Reply Ex." refers to the exhibits submitted with the Declaration of Christopher P. Malloy in Further Support of the Motion to Dismiss the Amended Complaint.

to "state with particularity all facts on which [their] belief is formed" is insufficient), *aff'd,* 764 F. App'x 127 (2d Cir. 2019).

Even if the ARC needed a detector similar to the CART's, the cost estimate Plaintiff challenges was for a production run of 15,000 or more units. (*E.g.*, Br. at 5-6, 14.) Yet Plaintiff fails to explain, let alone plead facts supporting an inference, why the *retail* price for a single, refurbished detector sold on the internet would bear any relationship to the wholesale cost of a detector purchased in bulk for a mass production run of 15,000 or more. It is a basic concept of manufacturing economics (called "economies of scale") that the cost to manufacture a product declines dramatically as production volumes increase. (*See, e.g.*, Reply Ex. 1.) In the medical device business, for example, the cost of procuring components can decline as much as 90% or more as volumes increase from one unit to ten thousand or more. (*See, e.g.*, Reply Ex. 2.)

With no facts to support its claim, Plaintiff resorts to obfuscation. According to Plaintiff, the Company only attributed the lower cost of manufacturing the ARC to the lower cost of the X-ray tube. (Opp. at 9-10.) This is not a credible reading of the Company's disclosure, which explicitly ties the overall cost estimate for the ARC to the assumption that 15,000 ARCs will be manufactured. (*See* Ex. 1 at 87.) In any event, Defendants did not need to explain to investors the obvious fact that component costs are significantly reduced in quantities of 15,000 or more.[2]

### B.   Plaintiff Fails to Allege that Statements Regarding the ARC's Capabilities Were False or Misleading

Plaintiff also does not support its claim that Defendants misrepresented the functionality of the ARC. Plaintiff claims the Company somehow misled investors into believing the ARC has

---

[2] Plaintiff makes the additional throwaway point that "nothing in Defendants' patent applications justifies the lower cost." (Opp. at 9.) Defendants are not required to prove to the Court that its patents support its cost estimates; it is Plaintiff that must plead facts to support its claim. *See* 15 U.S.C. § 78u-4(b)(1). Regardless, Defendants have already explained exactly how the Company's patents, on their face, support its cost estimates. (Br. at 10 n.4.)

the same capability as a CT system. As Defendants explained in detail (Br. at 11-13), however, the Company never stated the ARC would perform the functions of a CT system and, to the contrary, made clear that the ARC would be a tomosynthesis system. In response, Plaintiff attempts to invent statements the Company never made by confusing the Company's disclosures regarding (a) the X-ray source technology it is developing, (b) the initial system (the ARC) that will deploy that technology, and (c) the market the Company is targeting for the ARC (Opp. at 10), despite a clear understanding of the difference between them, (AC ¶ 28 ("Nano-X calls the tube using this source the 'Nano-X tube' . . . . The product, the Nanox.ARC . . .").)

The Company has stated that it is developing a semiconductor-based X-ray source – the cathode that generates X-rays – that has the prospect of being smaller, less complex and generating less heat than legacy X-ray sources (Ex. 1 at 81-83), and that it believes its X-ray source "can achieve the same functionalities as legacy X-ray analog" sources and has "the potential to replace the legacy X-ray source in other existing imaging systems." (*id.* at 1). Critically, however, the Company never stated or implied that the first *system* it was developing using its X-ray source was equivalent in capabilities to, or could replace, a CT scanner. Rather, the Company's disclosures explain that its first effort to exploit the new X-ray source technology will be the ARC, which it accurately described as a tomosynthesis system. Indeed, the Company's stated mission for the ARC is not to replace expensive CT imaging systems, but to provide a low-cost, alternative imaging system to the vast section of the market that lacks the resources to access such expensive systems.[3]

The statements Plaintiff challenges concern opinions on the potential capability of the X-

---

[3] (*See* Ex. 1 at 1 ("[W]e at Nanox are focused on . . . mak[ing] diagnostic medicine more accessible and affordable across the globe"); *see id.* at 2, 80 ("A lower cost device has the potential to substantially increase medical imaging availability and improve accessibility of early-detection services broadly across the globe.").)

ray source. (*See* Opp. at 10 (the Company "believe[s] [its X-ray source] can achieve the same functionalities as legacy X-ray analog cathodes"; "believe[s] [its X-ray source] will allow [it] to manufacture the Nanox.ARC, if cleared, at substantially lower costs compared to medical imaging systems that use a legacy analog X-ray source without sacrificing image quality"; and "ha[s] a technology that actually take generations forward the imaging capabilities.").) But the AC does not allege facts showing that statements about the X-ray source were false.

Recognizing that Defendants never **said** the ARC would have the same capability as a CT scanner, Plaintiff argues that the Company's statements comparing **the cost** of the ARC to CT scanners somehow created an "impression" that the devices had comparable functionality. (Opp. at 10-12.) As Defendants explained, however, the first page of the Company's IPO Registration Statement disclosed that the multi-source ARC, which would be its first commercial system, would be a tomosynthesis imaging system, not a CT scanner. (Br. at 6, 11-12.)

In response, Plaintiff contends that the disclosures describing the ARC as a tomosynthesis system were really referring to the "first product introduced to the market," which Plaintiff says was the single-source CART. (Opp. at 12-13.) This is nonsense, and contrary to the AC, which alleges that the ARC is a tomosynthesis system but does not allege the same for the CART. (AC ¶ 50.) The Company clearly stated that the system it intended to commercialize would be a tomosynthesis system and that the system it intended to commercialize was the multi-source ARC. (Br. at 11-12.) Plaintiff's "plain misreading" of the disclosure does not plead a false or misleading statement.[4] *See Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 414-15 (S.D.N.Y. 2020).

Even if investors could have misunderstood these disclosures to mean that the CART

---

[4] This argument is also consistent with materials relied upon in the AC, which references the Company's FDA submission for the CART that described the CART as an X-ray system, not a tomosynthesis system. (*Cf.* Reply Ex. 11 at 5 ("The Nanox CART X-ray system is a mobile X-ray system."; Reply Ex. 4 at 1 ("Nanox.ARC is a 3-D tomosynthesis imaging system that produces scans of a human body part.").)

(which the Company describes as the "single-source *version of*" the ARC) was a tomosynthesis system, Plaintiff cannot identify any statement in which the Company said the ARC would be anything other than a tomosynthesis system. In fact, multiple statements during the Class Period, many cited in the AC, identify the ARC as a tomosynthesis imaging system. For example:

- On September 22, 2020, the Company filed a press release on Form 6-K attaching a presentation titled "Dawn of early detection healthcare" and identifying the ARC as performing "3D computerized tomosynthesis" (AC ¶¶ 72-74; Reply Ex. 3 at 20);

- On a November 9, 2020 Company earnings call, Defendant Poliakine stated that the ARC is a "tomosynthesis X-ray system" (AC ¶¶ 77-78; Ex. 6 at 5);

- On April 6, 2021, the Company filed a Form 20-F Report for its fiscal year ended December 31, 2020, stating that "the first version of the multi-source Nanox.ARC that we expect to introduce to the market is expected to be a 3D tomosynthesis imaging system" (AC ¶¶ 90-92; Ex. 2 at 56);

- On a March 2, 2021 earnings call, Defendant Poliakine stated that the ARC "is a 3D tomosynthesis full-body imaging system" (Ex. 9 at 5);

- On June 17, 2021, the Company filed a press release on Form 6-K announcing its FDA submission for the first version of the multi-source ARC, stating that the ARC is a "3-D tomosynthesis imaging system" (Reply Ex. 4 at 1); and

- On November 11, 2021, the Company issued a press release calling the ARC a "multisource, digital tomosynthesis system" (Reply Ex. 5 at 1).

Given these repeated, unambiguous statements, Defendants statements were "literally accurate and remain[] so in both [their] context and presentation," and "it is improbable, if not impossible, that [they] would mislead investors." *Antigenics Inc. v. U.S. Bancorp Piper Jaffray, Inc.*, 2004 WL 51224, at *5 (S.D.N.Y. Jan. 9, 2004)[5]

Faced with these clear statements about the ARC's capabilities, Plaintiff claims that both the Company's current CFO and the SEC understood the ARC to be a CT system. (Opp. at 10,

---

[5] Plaintiff claims that it "defies reason" that the Company would compare the cost of the ARC with a CT scanner unless it was doing so to emphasize that they can perform the same functions. (Opp. at 11.) Not so. As explained at length in the Company's disclosures, and Defendants' Opening Brief (Br. at 12), the Company's goal is to *expand* the medical imaging market by designing a more affordable imaging system that would be available in places without access to imaging due to the cost and complexity of currently-available systems. (*See* Ex. 1 at 1; *see id.* at 2, 80.)

13.) Neither contention is supported by Plaintiff's allegations. To start, Plaintiff repeatedly confuses the term "tomography" with "*computed* tomography" (CT), and exploits that confusion to claim that the Company's current CFO – in a statement not referenced in the AC and outside the Class Period – believes the ARC is a CT system. (Opp. at 10-13.) Tomography is the process of taking a two-dimensional image of a slice of the human body using a wave, often an X-ray. (*See, e.g.*, Reply Ex. 6.) Both CT and tomosynthesis-based systems use tomography to create three-dimensional images. (*See* Reply Ex. 7 (digital tomosynthesis is a "form of limited angle tomography that produces section, or 'slice,' images"); Reply Ex. 8 ("[M]ultiple measurements taken from different angles are then processed on a computer using tomographic reconstruction algorithms to produce tomographic (cross-sectional) images.").) The difference between the two – which Plaintiff itself describes in the AC – is the *number of tomographic images taken and the angles at which they are taken*. (*See* AC ¶ 50.)

Plaintiff similarly mischaracterizes the SEC's December 31, 2019 comments on the Company's draft IPO registration statement. (Opp. at 10, 13.) The SEC asked the Company to "briefly discuss the basis" for its statement that the ARC would be marketed and deployed "*at a substantially lower cost*" than currently-available systems. (Reply Ex. 9 at 1 (emphasis added).) Nothing in that letter made any conclusion regarding the capabilities of the ARC.

C.    **The Allegedly False and Misleading Statements Are Protected by the PSLRA Safe Harbor and the Bespeaks Caution Doctrine**

There is no dispute that the Company is a development-stage company, and that Plaintiff has alleged that it has not yet shipped any units. (AC ¶ 135.) The statements Plaintiff alleges were misleading all concern the expected cost of mass producing a system that was still being developed and the capabilities that system hoped to achieve. As Defendants explained (see Br. at

6

13-16[6]), these are quintessentially forward-looking statements protected from liability under the PSLRA safe harbor and/or the bespeaks caution doctrine. *See* H.R. Rep. No. 104–369, at 43 (1995) (Conf. Red.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 741-42. Plaintiff's response offers nothing but contorted, circular reasoning. Plaintiff argues that Defendants' statements are really statements of current fact because they are current statements about what the future product will cost and its capabilities. (Opp. at 14-16.) Under this logic ***every statement*** would be a statement of present fact.[7] *See In re Barrick Gold Corp. Sec. Litig.,* 341 F. Supp. 3d 358, 376 (S.D.N.Y. 2018) (projections "are best characterized as forward-looking" as "'[f]orecasts of future events are necessarily contingent on present circumstances, but it is a game of semantics to label them as grounded in the present'" (alteration in original) (citation omitted)); *cf. Costanzo v. DXC Technology Co., et al.*, 2021 WL 5908385 (N.D. Cal. Dec. 14, 2021) (agreeing that "[p]laintiffs cannot convert facially forward-looking statements into a present representation of fact based on the Registration Statement's omission of an internal [cost-cutting] goal"). Plaintiff cites no support for this argument and cannot distinguish Defendants' cases holding that the statements are forward-looking.

Next, Plaintiff argues that the statements are not protected because (1) the cautionary language is deficient in that it "warns of facts already known to Defendants–their inability to manufacture the Nanox.ARC at the stated cost" and (2) the statements were knowingly false

---

[6] Plaintiff also misunderstands the statements regarding the functionalities of the Nanox X-ray tube versus the ARC itself. (*See supra*, Section I.B.) Moreover, as Nanox repeatedly disclosed, the ARC has not yet been produced *at scale*, further demonstrating the forward-looking nature of the challenged cost statements. (*E.g.*, Br. at 5-6, 14.)

[7] The cases Plaintiff cites all declined to apply the safe harbor or bespeaks caution doctrine to statements that were actually statements of current or historical fact, *not* statements that were forward-looking (as the statements at issue here are). (*See* Opp. at 14-16.) For example, in *In re Regeneron Pharmaceuticals, Inc. Securities Litigation*, 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005), the statements at issue had to do with, in part, results of clinical trials that *had already taken place*. *See id.* at *13-19. Further, *P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004), cited by Plaintiff, helpfully finds that plaintiff's allegation that "the projections of sales and revenue . . . were totally without foundation" involved forward-looking statements protected by the bespeaks caution doctrine. *Id.* at 97-98.

when made. (Opp. at 15-16.) Both of these arguments fail because Plaintiff has not alleged any facts in support of its claims that the ARC could not be manufactured at the stated cost, much less facts known to defendants at the time the statements were made. (*See supra*, Section I.A.; *see also infra*, Section II.)[8] In addition, the Company's cost estimate disclosure, and accompanying cautionary language, relates to the manufacture of 15,000 units. (Ex. 1 at 87.) Because the Company has not yet manufactured units at this scale (Ex. 3 at 10; Reply Ex. 12 at 5), no risk related to this disclosure has, by definition, materialized, and Plaintiff appears to be improperly collapsing an inquiry into the reasonableness of the cost estimates with the sufficiency of the cautionary language warning that the estimate might not be realized.

Finally, Plaintiff half-heartedly claims that "many of the alleged misrepresentations are alleged to be misleading for their omission of material facts." (Opp. at 16.) This is not an omissions case, however; Plaintiff claims that Defendants affirmatively misrepresented the cost and capabilities of the ARC. Indeed, Plaintiff's own cited case demonstrates that when a case alleges both misstatements and omissions, this argument is inapposite. *See In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 252-55 & n.4 (S.D.N.Y. 2020) (finding the safe harbor applied; noting "[w]hile the PSLRA safe harbor does not protect material omissions, Plaintiffs assert that this action is both a misstatement and omission case" (citations omitted)). Plaintiff's cannot transform this case into an omission claim to avoid the safe harbor.[9]

---

[8] Plaintiff cites *In re Alliance Pharmaceutical Corp. Securities Litigation*, 279 F. Supp. 2d 171 (S.D.N.Y. 2003), but in that case, the court found, as here, plaintiffs had failed "to offer any evidence that defendants knew that [a] statement was false when made." *Id.* at 193. Plaintiff also cites *Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994), but fails to mention it is a case for fraudulent misrepresentation under New York law, *see id.* at 1171-72, not a securities action subject to the PSLRA.

[9] *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755 (S.D.N.Y. March 25, 2013), also does not help Plaintiff. Unlike the instant action, that was a clear omissions case wherein plaintiff made particularized allegations, including statements from confidential witnesses identifying management's particular knowledge and opinions from an industry expert, that defendants had provided misleading earnings results, guidance, and business updates by failing to disclose a known and *current* glut of inventory that had mounted due to poor sales of a newly-launched

*(cont'd)*

8

### D.      Opinion Statements Are Not Actionable

Defendants established in the Opening Brief that the opinion statements cited in the AC are not actionable. (Br. at 17-18.) In the Opposition, Plaintiff argues that the AC is "replete" with allegations that Defendants knew the cost of the ARC was higher than the cost estimate and that it could not achieve the same functionalities as a CT scanner. (Opp. at 17.) For the reasons outlined in the Opening Brief (Br. at 17-18), Plaintiff's factual allegations are wholly insufficient to make the opinion statements actionable under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).

### E.      General Statements of Puffery and Expressions of Corporate Optimism Are Not Actionable

Plaintiff does not dispute that many of the statements in the AC are nonactionable puffery and expressions of corporate optimism (Br. at 18), arguing only that these statements are at issue in other pending actions. (Opp. at 18 fn.11.) But in the Opposition, Plaintiff argues that at least one of these statements is false and misleading. (*Cf.* Br. at 18 ("Defendants' statements describing the Company's technology as . . . taking the technology 'generations forward,' for example, are clearly not actionable."); Opp. at 10 ("Defendants represented that they . . . 'have a technology that actually take generations forward the imaging capabilities' . . . These statements are patently false.").) Given this, and Plaintiff's failure to address Defendants' substantive arguments, Plaintiff has conceded that these statements are nonactionable. *See In re UBS AG Sec. Litig.,* 2012 WL 4471265, at *21 n. 19 (S.D.N.Y. Sept. 28, 2012) (failure to respond to an argument "conceded the point by silence"), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

---

design and by failing to disclose that the same designs known to be causing the inventory problems *had already been ordered* nine months in advance. *Id.* at 1-8, 12-14.

9

F.       **Plaintiff Fails to Plead a Violation of Regulation S-K**

Plaintiff argues that the Company's known inability to deliver the product it promised to the market – according to Plaintiff, a CT scanner that cost $8,000 to $12,000 – represented a significant risk factor sufficient to support a violation of Regulation S-K, 17 C.F.R. pt. 229. (Opp. at 18.) Plaintiff has not plead facts sufficient to show that either the Company's cost estimates or description of the capabilities of the ARC were false when the statements were made. (*Supra*, Sections I.A., I.B.)[10] Moreover, Plaintiff ignores that (1) the AC's allegations do not concern a trend, risk or uncertainty, or (2) at best, the AC alleges that Defendants should have known about the trend or risk, both of which are insufficient because Plaintiff "must demonstrate actual knowledge of an existing trend, event, or risk to allege violations [of Regulation S-K]." *See In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y. 2021); (Br. at 18-19). Finally, to the extent Plaintiff is arguing that there was a material risk that the costs ***could*** be higher than estimated, that risk was disclosed. (*See* Br. at 6.)

## II.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiff does not dispute that it must allege a "strong inference" of scienter that "must be 'more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent,'" and that the Court "must consider . . . any competing inferences rationally drawn from the facts alleged, taken collectively." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)

---

[10] For this reason, Plaintiff's authority is inapposite. In *Indiana Public Retirement System v. Pluralsight, Inc.*, 2022 WL 3591140, at *24 (10th Cir. Aug. 23, 2022), the plaintiff adequately alleged facts showing that the defendant had known for two months that there was a "sales capacity gap" that would affect future billings. *Id.* at *24. And in *Panther Partners Inc. v. Ikanos Communications Inc.,* 681 F.3d 114 (2d Cir. 2012), the complaint contained particularized factual allegations showing that the defendant had received an increasing number of calls from customers alerting it to the fact that its chips were defective, that those customers constituted a substantial portion of the defendant's business, and that defendants may have to accept returns of all the chips sold to those customers. *See id.* at 121-22. The AC here contains no similar particularized factual allegations.

(quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)). Nor does it dispute that, absent allegations of motive and opportunity to commit fraud—which Plaintiff concedes by silence are not alleged in the AC—Plaintiff's allegations of conscious misbehavior or recklessness "must be correspondingly greater." *ECA*, 553 F.3d at 198-99. As Defendants have explained, Plaintiff's theory – that the Defendants invested substantial sums developing a product that could not perform its intended functions at the cost Defendants estimated, and then sought to mislead investors through statements whose falsity was purportedly so apparent that Plaintiff could unravel it with simple internet searches – is not "plausible," and there are no facts alleged that could move the needle to "cogent and compelling." (Br. at 20.)

First, in conclusory fashion, Plaintiff repeats the allegations that Defendants had "no basis" to make the statements regarding the functionalities of the ARC or the cost estimates. However, Plaintiff has not adequately alleged these statements *were even false*, so the claim that Defendants had no basis to make the statements fails. (*See* Br. at 8-13; *supra*, Section I.)[11]

Plaintiff cannot dispute that Defendants repeatedly explained that the ARC was a tomosynthesis system, which even Plaintiff knows is functionally different than a CT scanner. (AC ¶ 50.) It is not plausible to believe the Defendants would seek to mislead investors while at the same time disclosing the true facts revealing the supposed fraud. Plaintiff cannot avoid the similar flaw in its claim that Defendants knew but concealed the actual likely costs of manufacturing the ARC. The only "fact" Plaintiff alleges in support is the retail price for a refurbished X-ray detector from an internet page. Plaintiff does not allege any facts showing that

---

[11] The only case Plaintiff cites in support of this argument is *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) (Opp. at 20), which, aside from being out-of-circuit, is simply quoted for the unobjectionable proposition that the fact that defendants have published statements "when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *Id.* at 83. Of course, here Plaintiff has *not* plausibly alleged that Defendants knew facts suggesting the statements were inaccurate or misleadingly incomplete.

any Defendant learned about this internet page; or, indeed, any reason why they would have looked for it. Even assuming Plaintiff had alleged the price of refurbished detectors was information Defendants would have sought out, it is not plausible that Defendants would try to fraudulently conceal a fact so easily uncovered with an internet search. Plaintiff has no response to these points.

Second, Plaintiff's assertion that the SEC's letter "questioned" or "raised concerns" regarding the Company's cost estimates is inaccurate. (Opp. at 20.) Consistent with standard practices, the SEC and Nanox exchanged letters regarding the draft IPO Registration Statement, wherein the SEC provided questions and comments prior to finalization. (*See* Reply Exs. 9-10.) In one of the letters, the SEC asked Nanox to "revise paragraph four to briefly discuss the basis" for its statement regarding costs. (*See* Reply Ex. 9 at 1.) Nanox replied in a responsive letter and expanded its disclosures in the Registration Statement to explain the basis for the statement, as requested. (*See* Reply Ex. 10 at 1.) In doing so, the Company emphasized that its cost estimates were "subject to a number of assumptions and uncertainties and the actual cost per unit could vary significantly from our estimate, which would have a negative impact on our business." (Ex. 1 at 83.)[12]

Third, Plaintiff argues Defendants' "failure to disclose information that they had a duty to disclose supports an inference of scienter." (Opp. at 21.) However, as discussed *supra*, Section I.F., Plaintiff has not adequately alleged Defendants had a duty, let alone a clear duty, to disclose under Regulation S-K. "Because . . . this case does not present facts indicating a *clear duty* to

---

[12] *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), with dissimilar facts and applying New York state common law (not federal securities law), *see id.* at 170, simply holds that "allegations demonstrating defendant's 'awareness of undisclosed facts that rendered the company's representations to investors materially misleading' [are] sufficient to plead scienter." (Opp. at 20 (quoting *Loreley Fin.*, 797 F.3d at 178).) But again, Plaintiff has *not* demonstrated Defendants' awareness of any undisclosed facts.

disclose, plaintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001) (initial emphasis added).

Fourth, Plaintiff argues that it is "implausible that Defendants were not aware of crucial information in their possession that showed they could not manufacture the ARC at the low cost they claimed, nor could it achieve the functionalities of the CT scanner." (Opp. at 22.) But Plaintiff has not adequately alleged what "crucial information" was in Defendants' possession, and merely repackages the AC's deficient allegations of falsity.[13]

In a footnote, Plaintiff claims that the Company's updated production timing between 4Q 2020 and 1Q 2021 is indicative of scienter, because it purportedly "shows [Poliakine's] awareness of parts components, sourcing and cost matters" and, thus, creates "a strong inference that he had access to information about the costs of the parts components and that assembling the Nanox.ARC would cost more than represented." (Opp. at 22 n. 13.) Plaintiff cites no cases in support of this convoluted theory, which (as explained above) is nothing more than a new way of restating Plaintiff's allegations that the cost estimates were misleading, without alleging the facts available to Defendants showing this.[14] Finally, because Plaintiff's scienter allegations fail,

---

[13] Plaintiff's authority is inapposite. For example, in *City of Livonia Employees' Retirement System v. Wyeth*, 2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010), plaintiffs pointed to actual knowledge in the possession of defendants. *See id.* at *6-7. In *Gauquie v. Albany Molecular Research, Inc.*, 2016 WL 4007591 (E.D.N.Y. July 26, 2016), plaintiffs supported their allegations with a confidential witness. *See id.* at *2. Neither is true here. In addition, Plaintiff cites *KBC Asset Management NV v. 3D Systems Corp.*, 2016 WL 3981236 (D.S.C. July 25, 2016), which, in addition to being out-of-circuit, also undermines Plaintiff's core operations argument. *See id.* at *9 ("[S]peaking about these core operations, without more, is insufficient to establish scienter . . . .").

[14] In the same footnote Plaintiff baldly argues that the fact that Defendant ceased making the cost estimate after the receipt of the SEC subpoena supports scienter (Opp. at 22 n.13.) The sole case Plaintiff cites does not support this position. In *Zola v. TD Ameritrade*, TD Ameritrade's change in practices was itself allegedly wrongful conduct, and coupled with a subsequent increase in revenue, was supportive of scienter. 172 F. Supp. 3d 1055 (D. Neb. 2016). To the contrary, courts have held that removal of statements from SEC filings does not support falsity or scienter. *See Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *8, 21 (N.D. Cal. Dec. 18, 2017). This is not surprising, as it is well established in this circuit that even restating financial statements, standing alone, does not raise an inference of scienter. *Janbay v. Canadian Solar Inc.*, 2012 WL 1080306, at *14 (S.D.N.Y. Mar. 30, 2012). Moreover, the fact that Defendants ceased making the cost estimate says nothing about whether Defendants knew that estimate was false when made, and Plaintiff has alleged no facts to support such knowledge. *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020) (Kovner, J.) ("[P]laintiffs fail to allege any specific facts to suggest that these

*(cont'd)*

Plaintiff cannot save the AC with the core operations theory. (*See* Br. at 23.)[15]

### III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

The two purported corrective disclosures alleged in the AC are insufficient as a matter of law to allege loss causation. (*See* Br. at 23-24.) In the Opposition, Plaintiff admits that neither disclosure revealed any previously undisclosed facts concerning the capabilities of the ARC, and argues instead that the capabilities are "inescapably intertwined" with the Company's cost estimates. (Opp. at 23-4.) But Plaintiff fails to explain how these purported statements could be "intertwined" when, even if the ARC were to cost $50,000 to manufacture, as Plaintiff alleges, it would still be orders of magnitude less expensive than currently-available CT systems. (*See* Br. at 11.) Regardless, Plaintiff cannot ignore the fact that both disclosures are untethered from the alleged misrepresentation of the ARC's capabilities and thus "do not amount to a corrective disclosure . . . because they do not reveal to the market the falsity of the prior [statements]" on the subject. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005).

Next, the Company's disclosure of the SEC investigation, without more, is not sufficient to allege loss causation. While some courts within this circuit have held to the contrary, the Second Circuit has yet to rule on this issue, and there are several conflicting decisions within the Second Circuit itself. Consistent with the Second Circuit's approach to loss causation in *Lentell*, 396 F.3d at 173, disclosure of an investigation is not "corrective" because "[t]he announcement of an investigation reveals just that—an investigation and nothing more," and "does not reveal to the market that a company's previous statements were false or fraudulent." *Meyer v. Greene*, 710

---

defendants were actually aware of any weakness in Revlon's internal controls at the time of the challenged statements.")

[15]*In re Atlas Air Worldwide Holdings Inc. Sec. Litig,* 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004), cited by Plaintiff, has been called into doubt due to the passage of the PSLRA. *See Board of Trustees of City of Ft. Lauderdale General Employees' Retirement System, et al. v. Mechel OAO, et al.*, 811 F. Supp. 2d 853, 871-72 (S.D.N.Y. 2011).

14

F.3d 1189, 1201 (11th Cir. 2013); *see also In re Almost Family, Inc. Sec. Litig.*, 2012 WL 443461, at \*13 (W.D. Ky. Feb. 10, 2012) ("[n]umerous federal district courts have held that a disclosure of an investigation, absent an actual revelation of fraud, is not a corrective disclosure.").

Finally, the Oppenheimer Report does nothing more than provide the author's negative characterization of the Company's disclosures. (*See* AC ¶ 100.) A "negative characterization of already-public information" is not a corrective disclosure. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *see also Canez v. Intelligent Sys. Corp.*, 2021 WL 3667012, at \*10 (E.D.N.Y. Aug. 18, 2021) (Kovner, J.).[16]

## CONCLUSION

For the foregoing reasons, and because Plaintiff has not set forth any facts it might replead to remedy the deficiencies demonstrated herein, Defendants' motion should be granted, and the AC dismissed in its entirety, with prejudice. *See Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 218 (2d Cir. 2010).[17]

---

[16] Plaintiff's authority is not to the contrary. *Fogarazzo v. Lehman Bros., Inc.* did not involve a third-party corrective disclosure at all. 341 F.Supp.2d 274, 289-90 (S.D.N.Y. 2004). And in *Jefferson Ins. Co. v. Rouhana* (*In re Winstar Communications*), the third-party corrective disclosure (1) revealed information that was not publicly known, and (2) reflected conclusions from technical financial and accounting analysis investors could not be expected to perform, neither of which are present in the Oppenheimer Report. 2006 WL 473885, at \*5, 15 (S.D.N.Y. Feb. 27, 2006). Finally, in *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 242 (1st Cir. 2013), the alleged corrective disclosure did contain new information – that the integration of CVS and Caremark had failed.

[17] In the Opening Brief, Defendants outlined why Plaintiff's Rule 10b-5(a) and (c) and control person claims failed (*see* Br. at 24-25), and Plaintiff has not responded substantively to any of those arguments. Moreover, Plaintiff appears to convert its claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), into a claim under Section 15 of the Exchange Act, 15 U.S.C. § 78o. (*See* Opp. at 25.) Section 15 concerns registration of brokers and dealers and is irrelevant, *see* 15 U.S.C. § 78o, and any claims under that section should be dismissed.

Dated: New York, New York
September 9, 2022

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ Christopher P. Malloy

Christopher P. Malloy
Susan L. Saltzstein
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
christopher.malloy@skadden.com
susan.saltzstein@skadden.com

*Attorneys for Nano-X Imaging Ltd.*

Jeffrey J Chapman
Stephen G. Foresta
MCGUIREWOODS LLP
1251 Avenue of the Americas
20th Floor
New York New York 10020
Telephone: (212) 548-7060
jchapman@mcguirewoods.com
sforesta@mcguirewoods.com

*Attorneys for Ran Poliakine*

Hadar E. Israeli
Zvi Gabbay
Haguy E. Kessel
58 Harakevet St., 21st Floor
Tel Aviv, Israel
Telephone: +972-3-6400600
Fax: +972-3-6400650
hisraeli@barlaw.co.il
hkessel@barlaw.co.il

*Attorneys for Itzhak Maayan*

16