# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW WHITE, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:20-cv-04355-WFK-MMH |
| Plaintiff, | Hon. William F. Kuntz, II |
| v. | Hon. Magistrate Judge Marcia M. Henry |
| NANO-X IMAGING LTD., RAN POLIAKINE, and ITZHAK MAAYAN, | |
| Defendants, | |
| IN RE NANO-X SECURITIES LITIGATION | Case No. 1:21-cv-05517-RPK-PK |
| | Hon. Rachel P. Kovner |
| | Hon. Magistrate Judge Peggy Kuo |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement, dated June 2, 2023, is made and entered into by and among: (i) lead plaintiff in the *In re Nano-X* Action, Davian Holdings Limited, and lead plaintiffs in the *White* Action, Derson Jolteus and Edward Ko, on behalf of themselves and the Settlement Class; (ii) defendants Nano-X, Ran Poliakine and Itzhak Maayan, by and through their undersigned counsel. This Stipulation is intended by Lead Plaintiffs and Defendants to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released Claims, subject to the approval of the Court and the terms and conditions of this Stipulation.

**TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any infirmity in any of the claims asserted in the Litigation or that any of Defendants' defenses had any merit whatsoever, and without any admission or concession on the part of Defendants of any liability or wrongdoing or lack of merit in their defenses whatsoever, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (on behalf of themselves and the Settlement Class) and Defendants, subject to the approval of the Court, that the Litigation shall be dismissed with prejudice, and all Released Plaintiffs' Claims as against the Released Defendant Parties, and all Released Defendants' Claims, as against the Released Plaintiff Parties, shall be fully, finally, and forever compromised, settled, and released, upon and subject to the terms and conditions of this Stipulation, as follows:

1.      **Definitions**

As used in this Stipulation, the following terms, when capitalized, have the meanings specified below:

1.1.    "Authorized Claimant" means any Settlement Class Member who submits a valid Claim to the Claims Administrator that is accepted for payment from the Net Settlement Fund.

1.2.    "Claim(s)" means a paper claim submitted on a Proof of Claim and Release form or an electronic claim that is submitted to the Claims Administrator.

1.3.    "Claimant" means any Person that submits a Claim to the Claims Administrator in such form and manner, and within such time, as the Court shall prescribe.

1.4.    "Claims Administrator" means Epiq Global.

1.5.    "Complaints" means the Amended Class Action Complaint for Violations of the Federal Securities Laws filed in the *White* Action on October 31, 2022 (ECF No. 62), and the Amended Complaint filed in the *In re Nano-X* Action on April 12, 2022 (ECF No. 24).

1.6.    "Court" means the United States District Court for the Eastern District of New York.

1.7.    "Defendants" collectively means Nano-X and the Individual Defendants.

1.8.    "Defendants' Counsel" means Skadden, Arps, Slate, Meagher & Flom LLP, McGuireWoods LLP, and Barnea Jaffa Lande & Co.

1.9.    "Effective Date," or the date upon which the Settlement becomes "Effective," means the first date by which all of the events and conditions specified in ¶7.1 of this Stipulation have been met, have occurred, or have been waived.

1.10.    "Escrow Account" means an interest-bearing escrow account established and maintained by the Escrow Agent pursuant to ¶2.2 of this Stipulation to receive the Settlement Amount.

1.11.    "Escrow Agent" means The Huntington National Bank.

1.12.    "Fee and Expense Application" means the application or applications Lead Counsel may submit to the Court for an award from the Settlement Fund for attorneys' fees and payment of expenses incurred in connection with prosecuting the Litigation, plus interest earned on such

attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  The Fee and Expense Application may also include an application for a Lead Plaintiff Award.

1.13.    "Fee and Expense Award" means any attorneys' fees and expenses awarded by the Court, as described in ¶6.1.

1.14.    "Final" means, with respect to the Judgment: (a) if no appeal therefrom has been filed, the time has passed for any notice of appeal to be timely filed therefrom; or (b) if an appeal has been filed, either (i) the Judgment has been finally affirmed or (ii) the appeal from the Judgment has been dismissed, and in either case the time for any reconsideration or further appellate review has passed.  For purposes of this paragraph, an "appeal" shall include any motion for reconsideration or petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of the Settlement.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (a) the Fee and Expense Award, any Lead Plaintiff Award, or any other award of attorneys' fees, costs, or expenses to Lead Counsel or Lead Plaintiff; (b) the Plan of Allocation (as submitted or subsequently modified); or (c) the procedures for determining Authorized Claimants' recognized Claims shall not in any way delay, affect, or preclude the Judgment from becoming Final.

1.15.    "Individual Defendants" means Ran Poliakine and Itzhak Maayan.

1.16.    "*In re Nano-X* Action means the action captioned *In re Nano-X Securities Litigation*, Case No. 1:21-cv-05517-RPK-PK, pending before Judge Rachel P. Kovner in the Court.

1.17.    "IPO" means the public offering of Nano-X ordinary shares, that commenced on August 20, 2020, and closed on August 25, 2020.

1.18.    "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B, and where none of the Settling Parties elects to terminate the Settlement by reason of such variance, consistent with the terms of this Stipulation.

1.19.    "Lead Counsel" means the law firms of Levi & Korsinsky, LLP and Pomerantz LLP.

1.20.    "Lead Plaintiffs" means Davian Holdings, Derson Jolteus, and Edward Ko.

1.21.    "Lead Plaintiff Award" means any award by the Court to the Lead Plaintiffs for their service on behalf of the Settlement Class or for any Lead Plaintiff's reasonable time, costs and expenses directly relating to the representation of the Settlement Class.

1.22.    "Litigation" means the *White* Action and the *In re Nano-X* Action.

1.23.    "Nano-X" means Nano-X Imaging Ltd.

1.24.    "Net Settlement Fund" means the Settlement Fund less: (a) any Fee and Expense Award, including interest thereon; (b) any Lead Plaintiff Award; (c) Notice and Administration Expenses; (d) Settlement Fund Taxes and Tax Expenses; and (e) other Court-approved deductions.

1.25.    "Notice" means the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Hearing described in ¶7 of the Preliminary Approval Order as approved by the Court, substantially in the form attached hereto as Exhibit A-1.

1.26.    "Notice and Administration Expenses" means reasonable costs and expenses actually incurred in connection with:  providing Notice of the Settlement to the Settlement Class by mail, publication, and other means; locating Settlement Class Members; assisting with the

submission of Claims; processing Proof of Claim and Release forms; paying any escrow fees or Tax Expenses; or otherwise administering the Settlement.

1.27.    "Opt-Out Date" means the deadline for submitting a valid Request for Exclusion as set by the Court in the Preliminary Approval Order.

1.28.    "Person(s)" means an individual, corporation (including all divisions and subsidiaries), limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, joint venture, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, including a Person's heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees when acting in their capacity as such.

1.29.    "Plaintiffs' Counsel" means any attorney or firm who has appeared in the Litigation on behalf of Lead Plaintiffs or the Settlement Class or is included in the Fee and Expense Application.

1.30.    "Plan of Allocation" means the plan or formula of allocation described in the Notice or any alternate plan approved by the Court whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

1.31.    "Preliminary Approval Order" means the order entered by the Court, substantially in the form of Exhibit A attached hereto, preliminarily approving the Settlement, preliminarily certifying the Settlement Class, and directing dissemination of Notice to the Settlement Class.

1.32.    "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a Claim, which, subject to approval of the Court, shall be substantially in the form

attached hereto as Exhibit A-2, and that a Settlement Class Member must complete and submit should that Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.33.   "Related Parties" when used in reference to a Person, means and includes (i) the Person; (ii) for natural persons, each of that Person's immediate family members and any trust of which the Person is settlor or which is for the benefit of any such Person and/or member of his family, and, for non-natural persons, each of their direct or indirect parents, subsidiaries or wholly-owned affiliates; and (iii), for any of the Persons listed in sub-parts (i) or (ii) of this definition, their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys,   underwriters, investment bankers, commercial bankers,   insurers, reinsurers,   predecessors, successors, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, attorneys, legal or personal representatives, assigns, and assignees of each of them, and any controlling person thereof, in their capacities as such, and any entity in which such Person has a controlling interest.

1.34.   "Released Claims" means the Released Plaintiffs' Claims and the Released Defendants' Claims.

1.35.   "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Released Plaintiff Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against any Defendants in the Litigation, except for claims relating to the enforcement of the Settlement.  "Released Defendants' Claims" do not include (a) claims between or among Defendants or any combination of Defendants, including claims for indemnification; or (b) between Defendants and their insurers.

1.36.    "Released Defendant Parties" means Defendants, Defendants' Counsel, and their Related Parties.

1.37.    "Released Plaintiff Parties" means each and every Settlement Class Member, Lead Plaintiff, Lead Counsel, Plaintiffs' Counsel, and their Related Parties.

1.38.    "Released Plaintiffs' Claims" means any and all claims, demands, losses, rights, and causes of action of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law, by Released Plaintiff Parties, whether brought directly or indirectly against any of the Released Defendant Parties, that have been or could have been asserted in the Litigation or could in the future be asserted in any forum, whether foreign or domestic, and which: (a) relate to any of the allegations, transactions, events, disclosures, statements, acts, or omissions that were asserted, involved, set forth, asserted, or referred to, or could have been asserted, by a Released Plaintiff Party in the Litigation; or (b) arise out of, are based upon, or relate in any way, directly or indirectly, to the purchase, acquisition, holding, sale, disposition, or ownership of Nano-X securities during the Settlement Class Period. "Released Plaintiffs' Claims" do not include claims to enforce the Settlement, or the claims of any Person that submits a Request for Exclusion that is accepted by the Court.

1.39.    "Request for Exclusion" means a written request to be excluded from the Settlement Class within the time and in the manner specified in the Court's Preliminary Approval Order and the Notice.

1.40.    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.41.    "Settlement Amount" means eight million U.S. dollars ($8,000,000.00) to be paid to the Escrow Agent pursuant to ¶2.2 of this Stipulation.

1.42. "Settlement Class" means all Persons and entities who purchased or otherwise acquired Nano-X securities during the Settlement Class Period and who were damaged thereby. Excluded from the Settlement Class are (i) Defendants; (ii) the parent entity, officers, and directors of Nano-X, at all relevant times; (iii) members of the immediate families of such officers and directors of Nano-X, and their legal representatives, heirs, successors or assigns; and (iv) any entity in which Defendants have or had a direct or indirect controlling interest. Also excluded from the Settlement Class is any Settlement Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

1.43. "Settlement Class Member" means a Person who falls within the definition of the Settlement Class, as set forth in ¶1.39 above.

1.44. "Settlement Class Period" means the period between August 21, 2020 and November 17, 2021, inclusive.

1.45. "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.46. "Settlement Hearing" means the hearing set by the Court to consider whether the Settlement should be approved as fair, reasonable, and adequate within the meaning of Rule 23(e)(2) of the Federal Rules of Civil Procedure.

1.47. "Settling Parties" collectively means Defendants and Lead Plaintiffs, on behalf of themselves and the Settlement Class.

1.48. "Stipulation" means this Stipulation of Settlement, dated June ___, 2023.

1.49. "Summary Notice" means the summary notice of proposed Settlement and hearing for publication in a national business newswire, such as *PR Newswire*, substantially in the form attached hereto as Exhibit A-3.

1.50.    "Supplemental Agreement" means the separate confidential agreement between Lead Plaintiffs and Defendants, providing Defendant Nano-X with the right to terminate the Settlement and render it null and void if Settlement Class Members, who purchased or otherwise acquired more than a certain percentage of Nano-X securities subject to the Settlement, timely and validly exclude themselves from the Settlement Class.

1.51.    "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.52.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of ¶2.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.10, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions, or other payments from the Escrow Account, or the filing of any federal, state, or local returns).

1.53.    Unknown Claims" means (a) any and all Released Plaintiffs' Claims that any of the Released Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to the Settlement or seek exclusion from the Settlement Class; and (b) any and all Released Defendants' Claims that any of the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties

that, if known by him, her, or it, might have affected his, her, or its settlement and release of the Released Plaintiff Parties. With respect to (a) any and all Released Plaintiffs' Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against the Released Plaintiff Parties, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542. The Releasing Plaintiff Parties and Released Defendant Parties acknowledge, and shall be deemed by operation of law to have acknowledged, that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Plaintiffs' Claims or Released Defendants' Claims, but (a) the Releasing Plaintiff Parties shall expressly fully, finally, and forever compromise, settle, and release, and, upon the Effective Date, and by operation of the Judgment, shall have compromised, settled, and released, fully, finally, and forever, any and all Released Plaintiffs' Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have

existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever compromise, settle, and release, and, upon the Effective Date, and by operation of the Judgment, shall have compromised, settled, and released, fully, finally, and forever, any and all Released Defendants' Claims against Lead Plaintiffs, the Settlement Class and Lead Plaintiffs' Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

1.54.    "*White* Action" means the action captioned *White v. Nano-X Imaging Ltd. et al.*, Master File No. 1:20-cv-04355-WFK-MMH, pending before Judge William F. Kuntz in the Court.

**2.    The Settlement**

2.1.    The obligations incurred pursuant to this Stipulation are: (a) subject to approval by the Court and the Judgment, reflecting such approval, becoming Final; and (b) in full and final disposition of the Litigation and any and all Released Plaintiffs' Claims, as against all Released Defendant Parties, and Released Defendants' Claims, as against all Released Plaintiff Parties, upon and subject to the terms and conditions set forth herein.

### a.    The Settlement Amount

2.2.    In full and final settlement of the claims asserted in the Litigation, and in consideration of the releases specified in ¶¶4.1-4.3 of this Stipulation, Nano-X, on behalf of all Defendants, shall pay or shall cause the Settlement Amount to be paid into the Escrow Account within thirty (30) calendar days after the later to occur of: (a) entry of the Preliminary Approval Order; and (b) the Escrow Agent providing to Defendants' Counsel all information necessary to effectuate a transfer of funds to the Escrow Account, including, without limitation, (i) wire transfer instructions (including bank name and ABA routing number, address, account name, and number); (ii) the name and telephone number of an individual with knowledge who can verbally confirm the wire transfer instructions; and (iii) a complete and executed Form W-9 for the Settlement Fund that reflects a valid tax identification number.  The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated Escrow Account maintained by the Escrow Agent.

2.3.    If the entire Settlement Amount is not timely paid into the Escrow Account as set forth in ¶2.2 of this Stipulation, Lead Counsel may terminate the Settlement, but only if: (a) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement; and (b) the entire Settlement Amount is not transferred into the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.4.    Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund, as set forth in ¶2.2 herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator and shall have no liability whatsoever to the Released Plaintiff Parties in connection with such administration, including, but not limited to: (a) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or

the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (b) the management, investment, or distribution of the Settlement Fund; (c) the Plan of Allocation; (d) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (e) any loss suffered by, or fluctuation in value of, the Settlement Fund; (e) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions, or other payments from the Escrow Account, or the filing of any federal, state, or local returns; or (f) the payment of any other Notice and Administration Expenses.

2.5.    Other than the obligation to cause the payment of the Settlement Amount in accordance with the terms of ¶2.2 herein, Defendants shall have no obligation to make any other payments pursuant to this Stipulation.

### b.    The Escrow Agent

2.6.    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.2 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States government or an agency thereof, or fully insured by the United States government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.7.    The Settlement Fund, net of any Taxes, shall be used to pay: (a) the Notice and Administration Expenses of the Settlement; (b) any Fee and Expense Award or Lead Plaintiff Award made by the Court pursuant to the Fee and Expense Application, as defined in ¶6.1 hereof;

and (c) any other fees, payments, or awards subsequently approved by the Court. The balance of the Settlement Fund after the above payments shall be the Net Settlement Fund, which shall be distributed to the Authorized Claimants, as provided in ¶¶5.2-5.11 hereof. The Settlement Fund held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the Net Settlement Fund shall be distributed to Authorized Claimants or returned pursuant to this Stipulation and/or further order of the Court. The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' Counsel.

2.8.    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants and/or order of the Court, Notice and Administration Expenses up to the sum of $250,000.00. Prior to the Effective Date, all such Notice and Administration Expenses in excess of $250,000.00 shall be paid from the Settlement Fund subject to prior approval of the Court. After the Effective Date, Notice and Administration Expenses may be paid as incurred and as approved by Lead Counsel, without further approval of the Court.

2.9.    The Claims Administrator shall disseminate (a) the Notice, substantially in the form of Exhibit A-1 attached hereto, (b) Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, and (c) Summary Notice, substantially in the form of Exhibit A-3 attached hereto, to the Settlement Class in accordance with this Stipulation and as ordered by the Court. To the extent there are updates or modifications to the Notice, Proof of Claim and Release, and Summary Notice to the Settlement Class, such updates will be reflected on a class action website to be maintained by the Claims Administrator for the purpose of providing Settlement Class Members with information relating to this Settlement. The Released Defendant Parties shall have

no responsibility for, or liability whatsoever with respect to, the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

### c.    Taxes

2.10.    With respect to Taxes, the Settling Parties agree as follows:

(a)    The Settlement Fund shall be treated as being, at all times, a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, and the regulations promulgated thereunder.  The Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1).  The Escrow Agent shall timely make such elections, as necessary or advisable, to carry out the provisions of this ¶2.10, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the elections described in ¶2.10(a) hereof) shall be consistent with this ¶2.10 and, in all events, shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the

income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.10(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (ii) Tax Expenses, shall be paid out of the Settlement Fund by the Escrow Agent; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund, without prior order from the Court, and the Escrow Agent shall also be obligated to withhold, and shall be responsible for withholding, from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(*l*)(2)).  Neither the Settling Parties nor their counsel are responsible, nor shall they have any liability for any Taxes or Tax Expenses.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.10.

2.11.   This is not a claims-made settlement.  As of the Effective Date, the Released Defendant Parties, and/or any other Person funding the Settlement on their behalf, shall not have

any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims.  The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund.

### d.     Termination of Settlement

2.12.    In the event that this Stipulation or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed, vacated, or altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund, less Notice and Administration Expenses, Taxes, or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.8-2.9 and/or 2.10 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' Counsel in accordance with ¶7.5 herein.

### 3.     Preliminary Approval Order and Settlement Hearing

3.1.    Promptly upon the execution of this Stipulation, Lead Counsel shall use its best efforts to submit this Stipulation, together with its exhibits, to the Court in the *In re Nano-X* Action and shall apply for entry of (and Defendants shall not oppose the entry of) the parties' agreed-upon Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, preliminary certification of the Settlement Class for settlement purposes, and approval for the mailing of the Notice and publication of the Summary Notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto, and the scheduling of the Settlement Hearing at which the Court will consider whether to grant Final approval of the Settlement, finally certify the Settlement Class for

Settlement purposes, approve the Plan of Allocation, and issue an order concerning the Fee and Expense Application for the Fee and Expense Award and Lead Plaintiff Award.  The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, and the expected date of the Settlement Hearing.

3.2.    The Court in the *In re Nano-X* Action will set the procedures by which the settlement of the Litigation is assessed and approved, (1) but the Settling Parties shall request that (1) the Court in the *In re Nano-X* Action handle the approval of the Settlement, including the Settlement Hearing; (2) the Settling Parties file a letter motion with the Court in the *White* Action substantially in the form of Exhibit C,[], attaching the Stipulation, Proposed Order and Class Notice; and (3) subsequent to the Effective Date of the Settlement before the *In re Nano-X* Action Court, Lead Plaintiffs will file a stipulation of dismissal with prejudice in the *White* Action, if not already dismissed pursuant to the terms of the Settlement and Judgment contemplated thereby.

3.3.    Within ten (10) business days after the entry of the Preliminary Approval Order, Nano-X shall provide, or direct its transfer agent to provide, the Claims Administrator, at no cost to Lead Plaintiffs or the Settlement Class, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of registered owners of Nano-X securities during the Class Period.  The Claims Administrator shall disseminate the Notice and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court.

3.4.    Any Settlement Class Member who wishes to request exclusion from (*i.e.*, opt-out of) the Settlement Class must submit a written Request for Exclusion within the time and in the manner specified in the Court's Preliminary Approval Order and the Notice.  The Opt-out Date for

submitting a valid Request for Exclusion is to be set by the Court in the Preliminary Approval Order, but the Settling Parties shall request that the Opt-out Date be set so that all Requests for Exclusion are postmarked (for U.S. Mail) or received by the private carrier (for FedEx, UPS, etc.) at least twenty-one (21) calendar days before the Settlement Hearing. A Request for Exclusion is valid only if it is personally signed by the Settlement Class Member, and otherwise complies with all the requirements set forth in the Preliminary Approval Order and the Notice. Group opt-outs, including "mass" or "class" opt-outs, are not permitted. Any Settlement Class Member who does not submit a timely written Request for Exclusion will be bound by all proceedings, orders, and judgments in the Litigation, whether or not he, she, or it timely submits a Proof of Claim and Release.

3.5.    Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the Plan of Allocation, or to any aspect of the Fee and Expense Application must do so in the manner specified and within the deadlines specified in the Preliminary Approval Order and the Notice. The deadline for submitting such objections is to be set by the Court in the Preliminary Approval Order, but the Settling Parties shall request that the deadline be the same as the Opt-out Date, *i.e.*, all objections must be postmarked (for U.S. Mail), received by the private carrier (for FedEx, UPS, etc.), or filed with the Court at least twenty-one (21) calendar days before the Settlement Hearing. An objection is valid only if it is personally signed by the Settlement Class Member, and otherwise complies with all the requirements set forth in the Preliminary Approval Order and the Notice.

3.6.    As set forth in ¶2.9 above, it shall be the responsibility of the Claims Administrator to disseminate the Notice and otherwise implement the Notice program contemplated by the Preliminary Approval Order, as approved by the Court.

4.    **Mutual Releases**

4.1.    Upon the Effective Date, each and every Released Plaintiff Party, including Lead Plaintiffs and the other Settlement Class Members, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, settled, waived, released, relinquished, discharged, and dismissed each and every one of the Released Plaintiffs' Claims against each and every one of the Released Defendant Parties, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative or other forum, foreign or domestic, asserting the Released Plaintiffs' Claims against any and all of the Released Defendant Parties, whether or not such Released Plaintiff Party executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund.  Claims to enforce the terms of this Stipulation are not released.  In exchange for the mutual releases and other consideration set forth herein, including full payment of the Settlement Amount by or on behalf of Defendants, Lead Plaintiffs will, as provided for in the Judgment, also consent to the dismissal with prejudice of the Litigation as set forth herein.

4.2.    Any Proof of Claim and Release that is executed by a Settlement Class Member shall release all Released Plaintiffs' Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3.    Upon the Effective Date, each of the Released Defendant Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, settled, waived, released, relinquished, and discharged all Released Defendants' Claims against the Released Plaintiff Parties.  Upon the Effective Date, the Released Defendant Parties will be forever barred and enjoined from commencing, instituting, prosecuting, or maintaining any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative or other

forum, foreign or domestic, asserting the Released Defendants' Claims against any and all of the Released Plaintiff Parties. Claims to enforce the terms of this Stipulation are not released. Notwithstanding the foregoing, nothing in this Stipulation or its exhibits shall be construed as limiting, modifying, or otherwise affecting any insurance coverage or policies that may be available to any of the Released Defendant Parties.

5.    **Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1.    The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court, as may be necessary or as circumstances may require, shall administer, and calculate the Claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. As provided in ¶2.4 above, other than Nano-X's obligation to provide its securities holders' records as provided in ¶3.2 above, the Released Defendant Parties and Defendants' Counsel shall have no responsibility whatsoever for, interest in, or any liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator.

5.2.    The Settlement Fund shall be applied as follows:

(a)    to pay all Notice and Administration Expenses;

(b)    to pay the Taxes and Tax Expenses;

(c)    to pay the Fee and Expense Award and Lead Plaintiff Award, if and to the extent allowed by the Court; and

(d)    after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants, as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3.    All Proof of Claim and Release forms must be completed and postmarked (for U.S. mail) or received by the private carrier (for FedEx, UPS, etc.) or received electronically by the Claims Administrator within ninety (90) calendar days after the mailing of the Notice, or such other time as may be set by the Court.  Proof of Claim and Release forms shall be substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury, and supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to the Authorized Claimant.

5.4.    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim and Release, or otherwise allowed, and have not requested to be excluded from the Settlement Class, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will, in all other respects, be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Plaintiffs' Claims.  Notwithstanding the foregoing or any other provision of this Section 5, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted but otherwise valid Claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

5.5.    Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶5.7 below.

5.6.    Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim and Release, in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the opportunity to remedy any curable deficiencies in the Proof of Claim and Release submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claims the Claims Administrator proposes to reject, in whole or in part, for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶5.7 below.  Notwithstanding the foregoing or any other provision of this Section 5, Lead Counsel shall also have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deem to be *de minimis* or formal or technical defects in any Proof of Claim and Release submitted.  No Person shall have any claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

5.7.    If any Claimant whose timely Claim has been rejected, in whole or in part, for curable deficiency desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.6 above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the Claimant's request for review to the Court.

5.8.    Each Claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court, with respect to the Released Claims, including, but not limited to, all releases provided for herein and in the Judgment, and, to the extent applicable, any Claim submitted by such Claimant, which will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.  All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not, in any event, delay or affect the finality of the Judgment.  All Settlement Class Members, other Claimants, and parties to the Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

5.9.    No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.  If there is any balance remaining in the Net Settlement Fund six months after the date of the initial distribution of the Net Settlement Fund, the Claims Administrator at Lead Counsel's discretion shall, if feasible, after payment of any outstanding Notice and Administration Expenses, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00 as part of an additional distributions.  These additional distributions shall be repeated every six months until the balance remaining in the Net Settlement Fund is reduced to a level where, in the judgment of Lead Counsel, it no longer makes economic sense, considering costs of distribution,

to attempt to make further distributions. Any balance that thereafter still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to a 501(c)(3) non-profit charitable organization serving the public interest designated by Lead Counsel that has no affiliation or financial relationship with Lead Counsel, Lead Plaintiffs, Defendants, their Related Parties, or Defendants' Counsel, and is approved by the Court.

5.10.    No Person shall have any claim against the Released Defendant Parties, the Released Plaintiff Parties, or the Claims Administrator based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.11.    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to this Stipulation.

## 6.    Fee and Expense Application

6.1.    Lead Counsel may submit a Fee and Expense Application or Application(s) to the Court for a Fee and Expense Award, to be paid from the Settlement Fund. The Fee and Expense Application may include a request for a Lead Plaintiff Award. Defendants shall take no position with respect to Lead Counsel's Fee and Expense Application(s).

6.2.    The amount of the Fee and Expense Award is within the sole discretion of the Court. Any Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon award, subject to Court approval, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund (including interest at the same rate earned by the Fund) if and when, as a result of any appeal or otherwise, the amount of fees or expenses awarded is reduced or if the Settlement does not become Effective.  Lead Counsel may thereafter allocate the Fee and Expense Award among Plaintiffs' Counsel in a manner in which it, in good faith, believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3.    Any Lead Plaintiff Award approved by the Court shall be paid to the Lead Plaintiff(s) from the Settlement Fund after the Effective Date occurs.

6.4.    In the event that the Effective Date does not occur, or the Judgment or order granting (in whole or in part) the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason and such reversal, modification, cancellation, or termination becomes Final and not subject to review, then, to the extent that the Fee and Expense Award has been paid, Lead Counsel and such other Plaintiffs' Counsel who have received any portion of the Fee and Expense Award shall, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund, plus interest thereon, at the same rate as earned on the Settlement Fund in an amount consistent with such reversal, modification, cancellation, or termination.

6.5.    Any Fee and Expense Application shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, as set forth in this Stipulation, and shall have no effect on the terms of this Stipulation or the validity or enforceability of the Settlement.  The approval of the Settlement, and its becoming Final, shall not be contingent on nor otherwise affected by the grant or denial, in whole or in part, of any Fee and Expense Application, Lead Plaintiff Award, nor by any appeals or modifications of any resulting Fee and Expense Award or Lead Plaintiff Award.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

6.6.    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees or expenses (including Taxes) to Plaintiffs' Counsel, Lead Plaintiffs, or any other Person who receives payment from the Net Settlement Fund.

6.7.    Defendants shall have no responsibility for, and no liability whatsoever with respect to, the allocation of any Fee and Expense Award that the Court may make in the Litigation among Plaintiff's Counsel or any other Person who may assert some claim thereto.

**7.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1.    The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    certification, solely for the purposes of effectuating the Settlement set forth in this Stipulation, of the Settlement Class;

(b)      the Court has entered the Preliminary Approval Order substantially in the form of Exhibit A attached hereto, or another order as may be subsequently agreed to by the Settling Parties as provided in ¶7.4 below;

(c)      the Settlement Amount has been deposited into the Escrow Account;

(d)      no Settling Party has exercised its option to terminate this Settlement and Stipulation pursuant to ¶7.3 hereof;

(e)      the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto, or a judgment as may be subsequently agreed to by the Settling Parties as provided in ¶7.4 below; and

(f)      the Judgment has become Final, as defined in ¶1.13 hereof.

7.2.     Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If the conditions specified in ¶7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶7.5-7.7 hereof unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Settlement.

7.3.     Defendant Nano-X shall have the right to terminate the Settlement and render it null and void if Settlement Class Members, who purchased or otherwise acquired more than a certain percentage of Nano-X securities subject to the Settlement, timely and validly exclude themselves from the Settlement Class, as set forth in the Supplemental Agreement executed between Lead Plaintiffs and Defendants, by and through their counsel.  The Settling Parties agree to maintain the confidentiality of the Supplemental Agreement, which is being executed concurrently herewith.  The Supplemental Agreement shall not be filed with the Court unless and until the Court requires the Settling Parties to file the Supplemental Agreement or disclose its

terms.  If submission of the Supplemental Agreement is ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court, so as to preserve the confidentiality of the Supplemental Agreement, particularly the threshold aggregate number of shares.

7.4.    Lead Plaintiffs and Nano-X shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so  to all other parties hereto within thirty (30) calendar days of: (a) the Court's denial of Lead Plaintiffs' motion for preliminary approval of the Settlement in any material respect without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter a Final Judgment in any material respect without leave to amend and resubmit; or (d) the date upon which any proceedings before the Court, on remand after the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court, are completed.    Notwithstanding the foregoing, no order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, the Fee and Expense Award, or any Lead Plaintiff Award, shall be considered material to this Stipulation and shall not  constitute grounds for cancellation or termination of this Stipulation.

7.5.    Unless otherwise ordered by the Court, in the event this Stipulation is not approved, or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur, within fourteen (14) business days after written notification of such event is sent by counsel for Defendant Nano-X or Lead Counsel to the Escrow Agent, the Settlement Fund shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund  in the

amount of their contribution, together with any accrued interest, and with respect to the contribution by Defendant Nano-X, less Taxes, Tax Expenses, and Notice and Administration Expenses, which have either been disbursed pursuant to ¶¶2.8 and/or 2.10 hereof or are chargeable to the Settlement Fund pursuant to ¶¶2.8-2.9 and/or 2.10 hereof. The Escrow Agent or its designee shall apply for any Tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to the same Persons in the same manner as the Settlement Fund described in this ¶7.5. Payments pursuant to this paragraph shall be pursuant to written instructions from Defendants' Counsel.

7.6.    In the event that this Stipulation is not approved, or this Stipulation or the Settlement is validly terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of April 3, 2023. In such event, the terms and provisions of this Stipulation, with the exception of ¶¶1.1-1.47, 2.6-2.8, 2.10-2.12, 6.4-6.5, 7.4-7.7, and 10.6 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

7.7.    If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiffs nor Plaintiffs' Counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.8-2.10. In addition, any amounts already incurred pursuant to ¶¶2.8-2.10 hereof at the time of such termination or cancellation, but which have not been paid,

shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.12 and 7.5 hereof.

7.8.    Nano-X represents that, to the best of its knowledge, it is not "insolvent" within the meaning of 11 U.S.C. § 101(32) or under Israeli law as of the time the Stipulation is executed and does not expect to be as of the time the payment of the Settlement Amount is actually transferred or made as reflected in the Stipulation.  In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Amount to the Settlement Fund, or any portion thereof, by Nano-X or its insurers to be a voidable preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the United States Code (Bankruptcy), or applicable state or foreign law, and any portion thereof is required to be refunded, then the Settling Parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of the Defendants, the Settling Parties shall be restored to their litigation positions as of April 3, 2023, and the Settlement Fund (less any amounts disbursed pursuant to ¶¶2.7-2.10, 5.1-5.11) shall be promptly returned.

**8.    No Admission of Wrongdoing**

8.1.    Lead Plaintiffs acknowledge that they are entering into this Stipulation and the Settlement based on their own and Lead Counsel's investigation and after consultation with Lead Counsel, and not in reliance on any statements (oral or written) by Defendants, whether in this Stipulation or otherwise.

8.2.    Defendants are entering into this Settlement solely to eliminate the uncertainty, burden and expense of further litigation.  Each of the Defendants denies any wrongdoing and expressly denies that Lead Plaintiffs or the Settlement Class Members have asserted any valid claims as to any of the Defendants, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever. Defendants further deny that they made any material

misstatements or omissions, that they acted with the requisite state of mind, that any plaintiff, including Lead Plaintiffs, has suffered any damages, or that any plaintiff was harmed by any conduct alleged in this Litigation or that could have been alleged therein.

8.3.    Neither the Settlement, this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any drafts thereof, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)    is, may be deemed to be, or shall be offered as an admission of, or evidence of, the validity of any Released Claim as against a Released Defendant Party, or a Released Defendant Claim as against a Released Plaintiff Party;

(b)    shall be offered or received against any Defendant as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any Defendant of the truth of any allegations by Lead Plaintiffs or any Settlement Class Member or the validity of any claim that has been, or could have been, asserted in the Litigation, or the deficiency of any defense that has been, or could have been, asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Plaintiffs' Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(c)      shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant, or against Lead Plaintiffs or any Settlement Class Member, as evidence of any infirmity in the claims of Lead Plaintiffs and the Settlement Class;

(d)      shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason, as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(e)      shall be construed against Defendants, Lead Plaintiffs, or the Settlement Class as evidence of a presumption, concession, or admission that the consideration to be given hereunder represents the amount that could be, or would have been, recovered after trial or in any proceeding other than the Settlement.

**9.      Class Certification**

9.1.    The Settling Parties hereby stipulate, for purposes of the Settlement only, to certification of the Litigation as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; to certification of the Settlement Class as a class; to appointment of Lead Plaintiffs as representatives of the Settlement Class; and to appointment of Lead Counsel as counsel for the Settlement Class. In the event that the Judgment, if applicable, does not become Final or the Settlement fails to become effective for any reason, the Settling Parties reserve all their rights concerning class certification.

### 10.     Miscellaneous Provisions

10.1.    The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement and the Settlement contemplated therein; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

10.2.    The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation and the Released Claims.  The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party, as to the merits of any claim or defense.  The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, and any other applicable law or similar rule.  The Settling Parties agree that the Settlement Amount and other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties with the assistance of an experienced professional mediator and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

10.3.    The Settling Parties and their counsel agree not to assert in any statement made to any media representative (whether or not for attribution) that the Litigation was commenced or prosecuted by Lead Plaintiffs or defended by Defendants in bad faith or without a reasonable basis, nor will they deny that the Litigation was commenced and prosecuted and defended in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Settling Parties and their counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defenses, and resolution of the Litigation and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged. The Settling Parties reserve their right to rebut, in a manner that such party determines to be

appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.4.    Defendants and/or the Released Defendant Parties may file this Stipulation and/or the Judgment from the Litigation in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection under any applicable insurance policy.  The Settling Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or Judgment.  All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

10.5.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

10.6.    All of the exhibits to this Stipulation and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any Exhibit attached hereto, the terms of this Stipulation shall control.

10.7.    This Stipulation, along with its exhibits and the Supplemental Agreement, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.8.    This Stipulation and the exhibits attached hereto, together with the Supplemental Agreement, constitute the entire agreement among the Settling Parties hereto, as to the subject matter hereof, and supersede any prior or contemporaneous written or oral agreements or

understandings between the Settling Parties.  Each Settling Party expressly disclaims any reliance on any representations, warranties, or inducements concerning this Stipulation, its exhibits, or the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents.

10.9.   Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

10.10.  Lead Counsel, on behalf of the Settlement Class, represents that it is expressly authorized by Lead Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and conditions, and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class that it deems appropriate.

10.11.  Each counsel or other Person executing this Stipulation, its exhibits, the Supplemental Agreement, or any related Settlement document, on behalf of any party hereto, hereby warrants that such Person has the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Stipulation to effectuate its terms, without requiring additional consent, approval, or authorization of any other Person, board, entity, tribunal, or other regulatory or governmental authority.

10.12.  This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or PDF documents via e-mail shall be deemed originals.

10.13.  All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (a) when delivered personally to the recipient; (b) one

(1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), with delivery acknowledged by the carrier; (c) one (1) business day after receipt of an electronic return read receipt if sent by email; or (d) seven (7) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient, as set forth below:

**If to Lead Plaintiffs or to Lead Counsel:**

LEVI & KORINSKY, LLP
Nicholas I. Porritt
Shannon L. Hopkins
Adam M. Apton
Max E. Weiss
55 Broadway, #427
New York, NY 10006
nporritt@zlk.com
shopkins@zlk
aapton@zlk.com
mweiss@zlk.com

POMERANTZ LLP
Jeremy A. Lieberman
Justin D. D'Aloia
Marc I. Gross
600 Third Avenue
New York, New York 10016
jalieberman@pomlaw.com
jdaloia@pomlaw.com
migross@pomlaw.com

**If to Nano-X or the Individual Defendants or to their Counsel:**

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
Susan L. Saltzstein
Christopher P. Malloy
One Manhattan West
New York, New York 10001
susan.saltzstein@skadden.com
christopher.malloy@skadden.com

MCGUIREWOODS LLP

Jeffrey J. Chapman
Stephen G. Foresta
Louis D. Greenstein
1251 Avenue of the Americas, 20th Floor
New York New York 10020
jchapman@mcguirewoods.com
sforesta@mcguirewoods.com
lgreenstein@mcguirewoods.com

BARNEA JAFFA LANDE & CO.
Hadar E. Israeli
Zvi Gabbay
Haguy E. Kessel
58 Harakevet St., 21st Floor
Tel Aviv, Israel
hisraeli@barlaw.co.il
hkessel@barlaw.co.il

10.14.  This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.15.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

10.16.  The waiver by one Settling Party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other Settling Party or a waiver of any other prior or subsequent breach of this Stipulation.

10.17.  Pending the final approval of this Stipulation and its exhibits by the Court, all proceedings in the Litigation shall be stayed except for activities related to the approval or enforcement of the Settlement or Stipulation, and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Plaintiffs' Claims against any of the Released Defendant Parties consistent with any applicable orders of the Court.

10.18.  This Stipulation, its exhibits, and the Supplemental Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal substantive laws of New York without giving effect to its choice-of-law principles, except to the extent that federal law requires that federal law govern.

10.19.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.20.  This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

10.21.  Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

10.22.  Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

IN WITNESS THEREOF, the parties hereto have caused this Stipulation to be executed by their duly authorized attorneys, as of _____, 2023.

[SIGNATURES TO FOLLOW]

**STIPULATED AND AGREED:**

Jeremy A. Lieberman
Justin D. D'Aloia
Marc I. Gross
POMERANTZ LLP
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
jdaloia@pomlaw.com
migross@pomlaw.com

*Lead Counsel for Lead Plaintiff Davian Holdings Limited*

Brian Schall
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Davian Holdings Limited*

Nicholas I. Porritt
Shannon L. Hopkins
Adam M. Apton
Max E. Weiss
LEVI & KORSINSKY, LLP
55 Broadway, #427
New York, New York 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
shopkins@zlk.com
aapton@zlk.com
mweiss@zlk.com
nporritt@zlk.com

*Lead Counsel for Lead Plaintiffs Derson Jolteus and Edward Ko*

Susan L. Saltzstein
Christopher P. Malloy
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
susan.saltzstein@skadden.com
christopher.malloy@skadden.com

*Attorneys for Nano-X Imaging Ltd.*

Jeffrey J. Chapman
Stephen G. Foresta
Louis D. Greenstein
MCGUIREWOODS LLP
1251 Avenue of the Americas
20th Floor
New York New York 10020
Telephone: (212) 548-7060
jchapman@mcguirewoods.com
sforesta@mcguirewoods.com
lgreenstein@mcguirewoods.com

*Attorneys for Ran Poliakine*

Hadar E. Israeli
Zvi Gabbay
Haguy E. Kessel
BARNEA JAFFA LANDE & CO
58 Harakevet St., 21st Floor
Tel Aviv, Israel
Telephone: +972-3-6400600
Fax: +972-3-6400650
hisraeli@barlaw.co.il
hkessel@barlaw.co.il

*Attorneys for Itzhak Maayan*