UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK (BROOKLYN)

IN RE NANO-X SECURITIES LITIGATION

Case No.: 21-cv-5517

Brooklyn, New York
June 13, 2023
11:43 a.m. - 12:11 p.m.

TRANSCRIPT OF STATUS CONFERENCE HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Lead Plaintiff Davian Holdings: POMERANTZ LLP
BY: Jeremy A. Lieberman, Esq.
600 Third Avenue
New York, NY 10016

For Plaintiff Derson Jolteus: LEVI & KORSINSKY LLP
BY: Max E. Weiss, Esq.
55 Broadway
New York, New York 10006

For Defendant Nano-X Imaging: SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BY: Christopher P. Malloy, Esq.
Susan L. Satzstein, Esq.
One Manhattan West
New York, New York 10001

For Defendant Poliakine: McGUIREWOODS LLP
BY: Stephen G. Foresta, Esq.
1251 Avenue of the Americas
New York, New York 10020

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

THE DEPUTY CLERK: Cause for a status conference, telephone conference, Docket Number 21-cv-5517; In re Nano-X Securities Litigation. Magistrate Judge Peggy Kuo presiding.

Will the parties please state their appearances, beginning with plaintiffs.

MR. D'ALOIA: Good morning, Your Honor. This is Justin D'Aloia on behalf of lead plaintiff, Davian Holdings Limited.

MR. WEISS: Good morning, Your Honor. Max Weiss, Levi & Korsinsky, for lead plaintiffs in the White action, Derson Jolteus and Edward Ko.

MR. MALLOY: Good morning, Your Honor. This is Chris Malloy, and with me is Susan Saltzstein from Skadden, Arps, Slate, Meagher & Flom, for defendant, Nano-X.

MR. FORESTA: Good morning, Your Honor. This is Steven Foresta from McGuireWoods, representing defendant, Ran Poliakine.

THE COURT: And I understand that there is no appearance for the other defendant, Maayan?

MR. MALLOY: This is --

THE COURT: The --

MR. MALLOY: This is Christopher Malloy.

THE COURT: Oh.

MR. MALLOY: We were able to reach Mr. Maayan's counsel, and we understand that they are not planning on appearing.

THE COURT: All right. I note that they were admitted pro hac vice, and they're in Tel Aviv.

Okay. So let's look at the motion for preliminary approval. I'll give the parties an opportunity to walk me through the proposal, including the notice and the timing. I want to make sure that the timing of things is still appropriate, given that you filed the motion on June 2nd, which is almost two weeks ago. So I don't know if any dates need to be adjusted, including the proposed fairness hearing date.

I'd like to hear from the parties whether you think the hearing, the fairness hearing, should be in person or remote. And then I also would like to have some explanation of how this case interacts with the White case. I note that Judge Kuntz, in that case, stayed that case pending approval of settlement here, but in many of the papers, including the notice, the caption includes the caption of both cases. And I don't know that I have jurisdiction over that other case such that I could approve that this matter go out with the caption of

a case over which I have no jurisdiction. So I put those things out there so that you can talk about each of those, and I may have questions as well.

So, Mr. D'Aloia, perhaps you're the best person to start.

MR. D'ALOIA: Yes. Thank you, Your Honor.

Starting with the timing and sequence of events set forth in the parties' proposals, we believe that the hearing date is still appropriate and attainable. Since filing our papers on June 2nd, the parties have already started the process of exchanging information called for by the settlement agreement in order to kick off the process as expeditiously as possible. And we are doing all we can with the claims administrator to get the notice out to the settlement class as soon as possible after the entry of the preliminary approval order contemplated by the settlement agreement. And we hope that we'll be in a position to do that by no later than the end of this week or early next week, so we can do so well before the deadline of 21 days after the entry of the preliminary approval order.

THE COURT: Okay.

MR. D'ALOIA: As for the interface between

this action and the White case, this is a global settlement that has been reached between the parties in these respective matters. And as Your Honor noted before, there was an order entered in the White action on June 6th by Judge Kuntz which stayed all proceedings in that action during the settlement approval process and ordered and approved the procedures set forth in the parties' settlement agreements, including proceeding for purposes of approving the settlement agreement in this matter, given that the settlement -- or the class period is broader than that in the White matter and fully encompasses the class period in the White matter.

So we believe that the entry of the order approving that procedure by Judge Kuntz should provide appropriate authority to proceed as the parties have outlined in their settlement agreement.

THE COURT: Well, I think my concern is perhaps a more procedural one, which is that when you put a caption on a case, it assumes that whoever is entering the order in that matter has jurisdiction over that caption. And by captioning the -- for example, your proposed preliminary approval order, with both the White matter and this matter, it's -- you're, in effect, saying that if I

were to sign that, that I somehow can enter that order in the White matter, which I don't believe I can.

So I'm just concerned about representing that anything I do here binds the White matter in any respect, and especially since that case has been stayed, right? So it's fine for the parties to talk about the White matter and to say that once this case is resolved and settled and the settlement has been approved that you are then prepared to dismiss the White matter as unnecessary to move forward because it's fully encompassed as you described.

I'm focused on whether you can say that I can enter an order here that affects the White matter at all, and whether the proposed class members should be considering themselves a class member in the White matter because nothing is happening in that case. There's been no settlement approval in the White matter and also no class certified.

So, as I say, it is a somewhat procedural point, but I don't want to take action that appears to extend beyond the -- my proper jurisdiction, including infringing on the jurisdiction of my colleagues who are presiding over a different case.

MR. D'ALOIA: Yes. Understood, Your Honor.

And the one thing I would point out on this point is that the procedure that was approved by Judge Kuntz was to proceed as contemplated in the In re Nano-X action while the White matter is stayed. And once the final judgment is entered in the In re Nano-X action, to enter a voluntary dismissal with prejudice in the White matter.

So I think that, logistically, the procedure will work as you suggested earlier. And perhaps we can alleviate your concern about going beyond the Court's jurisdiction by simply removing the White action from the caption of the papers. But, you know, I welcome thoughts from defense counsel on this point as well.

THE COURT: All right. I certainly think that's a good first step because, for example -- and what you've already filed, you've filed, but the things that still need to go out -- for example, the long form notice is captioned with the White matter. The proposed order, which I don't have to adopt, so I can change that myself, also has a caption of the White matter. And the description that you're giving to the class members also talks about the White matter. Let me see if I can pull that up.

That is not entirely accurate or up to date. Let me see if I have that.

Yes. So, for example, what you have filed at the -- ECF 67-3 is your long form notice, Exhibit A1. And when you talk about it under page 2, first full bullet point on that case, the proposed settlement concerns two losses. And then your description of it on page 6 with basic information also talks about two lawsuits. And there, you're also talking about the lead plaintiffs in the White action making certain allegations, and then lead plaintiffs in the Nano-X action.

But if you intend to have both actions be addressed, then I don't think that the -- I think, then, both sets of judges, or a judge in each action -- in that case, it would -- it's currently before Judge Kuntz. Judge Kuntz would also have to approve the settlement. Do you see what I'm saying?

You know, by saying that this is actually two lawsuits, you are requiring that the judges presiding over those two lawsuits approve the settlement. It's fine to say that this lawsuit encompasses the other one, but then you should be talking about this lawsuit --

MR. MALLOY: Your Honor, this is --

THE COURT: -- the other -- I mean, you could say you made -- you know, as part of the notice there is this other lawsuit, but we believe this is encompassed here. So we don't -- we're not talking about that other lawsuit, just in case you're wondering, it is encompassed here. But this lawsuit is this lawsuit. But you're, kind of, mixing up the issues by talking about the White action because this settlement is not supposed to be the White action.

MR. MALLOY: Your Honor, this is Chris Malloy for the -- for Nano-X.

The concept -- the broad concept, I think, is that the claims that are being asserted in both actions, at least on behalf of the plaintiff class in the White action, are also essentially being asserted in this action, and that a final judgment entered in this action would dispose of and render moot the White action, which is why we provided that it would be dismissed upon approval in this action. But Your Honor is raising some issues relating to the form of the notice, and maybe what makes sense is for us to get with the plaintiffs and think about what the best way to proceed is.

THE COURT: Yeah. I do have a concern that

you're leading to some confusion to somebody who's reading it carefully to say, wait a second, is this resolving -- you know, which case is this resolving? And as I have expressed on an ongoing basis, because they're two different judges, I can -- I don't feel comfortable entering an order that affects Judge Kuntz, who has not referred the matter to me, nor can he because it's before Magistrate Judge Henry, if anyone were to be referred that case.

So -- and then also, you know, the description on page 8, section 4, about the White action talks about the White action being stayed pending a ruling on the defendant's motion to dismiss Nano-X. But, actually, the White action has been stayed as of June 6th, ending the resolution of this settlement agreement. So I just want to make sure that this is all accurate and up to date.

And talking about the White action as something that exists and it will be rendered moot by this case is fine if you think that's important to bring up, but I don't think you can find support in that case through an action in this case. In other words, there's still some hypothetical possibility that Judge Kuntz doesn't dismiss that

case based on what he sees. So I wouldn't -- you can say the parties consider that encompassed here, but because that action exists and it's before a district judge, I don't think you can say for sure because Judge Kuntz still has to approve any dismissal in that case.

All right. So it's a somewhat technical point, and it's jurisdictional between different judges of the court, but I just want to make that -- make sure that the parties are focused on that and making it clear.

MR. D'ALOIA: Yeah. Your Honor, this is Justin D'Aloia on behalf of lead plaintiff.

I think Your Honor has given us some very helpful guidance to incorporate into the language that we use, particularly in the notice. And I think that we can address Your Honor's concern by limiting the discussion of the class that's being certified and the judgment that's being entered to the In re Nano-X action, but noting that the parties have agreed to voluntarily dismiss the other action that we believe will be rendered moot as a result of this settlement to keep things consistent as a technical matter.

THE COURT: Right. Okay. So let's do

that.

MS. SALTZSTEIN: Well, I think it's -- I think that's just to say it -- Susan Saltzstein on behalf of Nano-X. I think it does require some discussion amongst the parties, so we can do that.

THE COURT: Okay. Please do that.

But since I have everybody here, let's talk about the rest of the settlement proposal because I think I have fewer concerns there.

So do -- again, Mr. D'Aloia, I'll start with you. Did you want to walk me through what you intend -- what the terms, the salient terms, of the settlement are and how you intend to proceed from this point?

MR. D'ALOIA: Yes, Your Honor.

So the settlement is an $8 million, all cash settlement. It is not a claims made settlement. So the entire settlement amount will be distributed to authorized claimants who submit valid and timely claim forms on a pro rata basis, equitably amongst all those who do so. The notice will go out to settlement class members, as I mentioned earlier, as quickly as possible following the entry of a preliminary approval order. And settlement class members will have until 90 days

after the notice goes out to file their claim forms.

In the meantime, we had previously contacted the Court's chambers to secure a preliminary settlement hearing date of September 7th at 11:00 a.m., and there are several filings and deadlines that arise in anticipation of that date. The first being the deadline to file objections to the settlement terms, as well as to request exclusion from the settlement, which would be August 17, 2023. Fourteen days before that is the deadline to file final papers in support of the final approval of the settlement, which would give all settlement class members the opportunity to review those in advance of the deadline for filing objections.

Fourteen days before the settlement hearing is the deadline for the parties to file proof of mailing of the notice and the summary notice. And then five business days before the settlement hearing is the -- well, I'm sorry. Excuse me. Seven calendar days before the settlement hearing is the deadline to file any reply in further support of the motion for final approval in which the parties would either respond to any objections or latent issues or advise the Court that there were no such

objections or issues.

THE COURT: All right. Thank you.

I'm sorry. For the damages, it's $8 million, and the claims will be -- all of it will be paid out based on a pro rata basis, based on the claims that are submitted.

Did you give a formula for how you're planning to divide up pro rata, that amount?

MR. D'ALOIA: Yes. There is a formula set forth in the plan of allocation, which is described, or summarized, should I say, beginning at page 11 of the long form notice, which is ECF 63 -- or, I'm sorry, 67-3, Section 9.

THE COURT: Okay.

MR. D'ALOIA: And because this case involves several different disclosures and several different alleged misstatements and several different corrective disclosures, there are various periods with differing formulas, but they are all set forth on page 12. And we also include the table that describes what is known as the "90-day PSLRA lookback," which puts a cap on the damages that are available based on the 90-day trading average following the final corrective disclosure.

THE COURT: Okay.

MR. D'ALOIA: So all settlement class members can review that information there.

THE COURT: I see that. All right. Thank you for showing me.

Is -- and you're asking for preliminary approval of the plaintiffs as the representative. Is there going to be any kind of award for being a representative, or that's not part of what you're requesting?

MR. D'ALOIA: The PSLRA itself authorizes the Court to provide an award for serving as lead plaintiff. We've indicated in our papers that lead counsel intends to ask the Court to grant lead plaintiff an award in an amount not to exceed $9,000 in total, which is less than the typical amounts that most lead plaintiffs receive for securities class-action service, recognizing the stage of proceedings that the case currently sits in.

THE COURT: Okay. Thank you.

And then I had a question because I'm not very familiar with the California Civil Code, the stipulation with regard to giving up unknown claims. Can you just tell me what is encompassed there.

This is section -- in the agreement, Section 1.53 under definition of "unknown claim."

MR. D'ALOIA: Yes. So the California Civil Code requires the express disclosure that unknown claims are included in any release, but I believe that this is a definition that is incorporated into the released plaintiffs' claims. And in order to comply with the California Civil Code or any similar law, we have included that express disclosure in the terms of both the stipulation of settlement as well as the long form notice, as is common practice in securities class action settlements.

THE COURT: Okay. So that's standard language. It's not anything that's unusual.

MR. D'ALOIA: No. This -- I welcome any thoughts from anyone else on the line if they disagree with me, but this is a fairly standard disclosure and term of settlement agreements in class actions arising under federal securities laws.

THE COURT: Okay. All right. So those are the questions that I have. I would like to find out if any other counsel want to jump in and either add anything or clarify anything you think needs to be clarified.

All right. Very good. So what I would propose is that the parties reconfer with regard to how the White action is being dealt with here in

both the explanation for -- in the notice, and then in any other part of what you filed as an explanation for what is happening there.

My understanding, as you've explained it, is that if this action is finally approved, if the settlement is finally approved, that that will cause the parties in the White action to file a stipulation of dismissal with prejudice and file that before Judge Kuntz in that action. And so, as I said, that is fine. I just want to make sure that whoever's looking at these papers from this point going forward are clear as to what is happening in this case, because I believe nothing should be happening in the White case until the parties go back to Judge Kuntz and ask him to lift the stay and then file what I anticipate will be that, a stipulation of dismissal.

So, you know, there should not be any filing with any caption or purporting to do anything in that case because it is stayed until that point; okay? So just try to figure out how to make that clear that, in fact, that is fully stayed and nothing is happening there, and there's no misapprehension that anything I or Judge Kovner enter in this case is a statement of something that

is happening in the White case.

So should I give the parties some -- and then also, depending on how much time you need to get that figured out, if you need to adjust the dates, including the fairness hearing date, I'll grant you leave to contact my chambers to get a date that's appropriate to get everything done, giving me a few days' window to look at what you're going to file as an updated way of dealing with the White case so that there was -- is a little bit of leeway so you're not filing it and expecting that I will approve it that same day.

It may be that you're doing it so efficiently that we will get it -- everything done and September 7th is still good. But if it needs to be pushed back a few days, I will grant you -- we'll go to one representative of the parties to contact my chambers to get a good date so that we can add that to the notice. All right. Good.

Mr. D'Aloia, is there anything else?

MR. D'ALOIA: Nothing else on behalf of lead plaintiffs. Thank you, Your Honor.

THE COURT: All right. Mr. Weiss?

MR. WEISS: Nothing further, Your Honor.

THE COURT: Okay. Ms. Saltzstein or

Mr. Malloy?

MR. MALLOY: Nothing from defendants, Your Honor. Thank you. From Nano, actually.

THE COURT: Okay. And Mr. Foresta?

MR. FORESTA: Nothing on behalf of Mr. Poliakine.

THE COURT: Okay. All right. And I don't think there was anyone else. Thank you.

So I will look for the revised notice and any other corrections or supplements to what's been filed, and then I'll review what you are going to file in light of our discussion today, and I'll make my decision of the preliminary approval in due course. As quickly as I can, I will have it.

All right. Thank you, everybody.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of In re Nano-X Securities Litigation, Docket #21CV5517 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature *Adrienne M. Mignano* ____________________________

ADRIENNE M. MIGNANO, RPR

Date: June 22, 2023