**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NANO-X SECURITIES LITIGATION | Case No. 1:21-cv-05517-RPK-PK<br><br><br>Hon. Rachel P. Kovner<br><br>Hon. Magistrate Judge Peggy Kuo |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
<u>**OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**</u>

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   BACKGROUND .........................................................................................................2

      A.    Relevant Procedural History ...........................................................................2

      B.    The Settlement .................................................................................................4

            1.    Settlement Negotiations and Finalization ...........................................4

            2.    The Court's Preliminary Approval of the Settlement ..........................5

            3.    Notice And Response of the Settlement Class To Date........................6

III.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED AS A CLASS .....................7

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL............................................7

      A.    The Standards for Final Settlement Approval .................................................8

      B.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class ...........9

      C.    The Settlement Negotiations Were Conducted at Arm's-Length and Under
            the Oversight of an Experienced Mediator ....................................................11

      D.    The Settlement Is Fair and Adequate Considering the Costs, Risks, and
            Delays Continued Litigation ..........................................................................12

            1.    The Complexity, Expense, and Likely Duration of the Litigation
                  Support Approval of the Settlement ..................................................13

            2.    The Risks of Establishing Liability and Damages Support
                  Approval of the Settlement ................................................................16

      E.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors......................19

            1.    The Proposed Method for Distributing Relief Is Effective.................19

            2.    The Requested Attorneys' Fees Are Reasonable................................20

            3.    The Parties Have No Other Agreements Other Than the Previously
                  Disclosed Agreement to Address Requests for Exclusions ................20

            4.    Settlement Class Members Will Be Treated Equitably .......................21

      F.    Application of the Remaining *Grinnell* Factors Supports Approval ...............21

            1.    The Ability of Defendants to Withstand a Greater Judgment.............21

2.      The Reaction of the Settlement Class to Date ...........................................22

3.      The Stage of the Proceedings and Maturity of the Issues Support
        Approval ...................................................................................................22

V.      THE PLAN OF ALLOCATION SHOULD BE APPROVED ..........................................23

VI.     CONCLUSION..............................................................................................................24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ..................................................................................15

*Beltran v. SOS Ltd.*,
2023 WL 319895 (D.N.J. Jan. 3, 2023) ....................................................................19

*Bleton v. GE Cap. Consumer Lending, Inc.*,
2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ..............................................................11

*Charles v. Opinion Access Corp.*,
2020 WL 9812930 (E.D.N.Y. Mar. 13, 2020) ...........................................................22

*Christine Asia v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 6, 2019) ..............................................................20

*City of Detroit v. Grinnell Corporation*,
495 F.2d 448 (2d Cir. 1974)............................................................................... *passim*

*Copley v. Bactolac Pharm., Inc.*,
2023 WL 2470683 (E.D.N.Y. Mar. 13, 2023) ...........................................................21

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
2021 WL 7906584 (E.D.N.Y. May 25, 2021) .............................................................9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)........................................................................................22

*Ebbert v. Nassau Cnty.*,
No. 05-5445, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011)......................................16

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
141 S. Ct. 1951 (2021)...............................................................................................16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)...................................................................................................16

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...........................................................15

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ......................................................17, 20, 23

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................22

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................................................................13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)....................................................................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ..............................................................................13, 24

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...........................................................13, 20

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................24

*In re Graña y Montero S.A.A. Sec. Litig.*,
  2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021)....................................................... *passim*

*In re GSE Bonds Antitrust Litig.*,
  2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ...............................................................12

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ..............................................................................18, 22

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).............................................................................14

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................................12

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...........................................................................18

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ....................................................12, 20, 21, 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card I*),
  330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................9, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card II*),
  2019 WL 6875472 (E.D.N.Y. Dec. 26, 2019) .............................................................19, 23

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020)............................................................14, 23

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................15, 17, 18

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)..................................................................15

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (E.D.N.Y. Nov. 30, 2021) (Parker, M.J.) ...........................21, 24

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ...............................................................9

*Parker v. Time Warner Ent. Co.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) .......................................................................22

*Pearlstein v. Blackberry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).............................................7, 17, 24

*Rodriguez v. CPI Aerostructures, Inc.*,
  2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)......................................11, 12, 23, 24

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)..........................................................................................7

*Whiteley v. Zynerba Pharms., Inc.*,
  2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ..........................................................21

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................6

**Rules**

Fed. R. Civ. P. 23................................................................................................. *passim*

**Other Authorities**

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in
  Securities Class Action Litigation: 2022 Full-Year Review*, Fig. 19 (NERA
  Economic Consulting Jan. 24, 2023) .......................................................................13

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Rules"), Court-appointed Lead Plaintiff Davian Holdings Limited ("Davian Holdings"), together with additional plaintiffs Derson Jolteus, and Edward Ko (collectively, "Plaintiffs"), individually and on behalf of the proposed Settlement Class, respectfully submit this memorandum of law in support of their Motion for final approval of the proposed class-wide Settlement of this Litigation, as set forth in the Stipulation of Settlement, dated June 2, 2023 (ECF No. 67-1) (the "Stipulation").[1]

## I.    PRELIMINARY STATEMENT

On June 2, 2023, after almost three years of hard-fought litigation, and following arm's length negotiations before experienced mediator Jed Melnick, Esq., Plaintiffs and Defendants agreed to settle all claims that were brought or could have been brought in this action, including the claims asserted by Plaintiffs Jolteus and Ko in the *White* Action pending before Judge William F. Kuntz, II, for $8 million in cash on the terms set forth in the Stipulation.  On October 31, 2023, Magistrate Judge Kuo entered a Decision and Order preliminary approving the proposed Settlement, preliminary certifying a Settlement Class, directing notice of the proposed Settlement to potential Settlement Class members, and setting deadlines for the filing of any papers in support of final approval of the Settlement in advance of a Settlement Hearing scheduled for February 15, 2024.  Through this Motion, Plaintiffs now seek final approval of the proposed Settlement and Plan of Allocation following the completing of the notice program approved by the Court.

The Settlement represents an excellent result for the Settlement Class and easily satisfies the factors set forth in Rule 23(e)(2) and *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974), for approving class-wide settlements. The Settlement provides an immediate and

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation. All declarations cited herein refer to the declarations attached to the All declarations cited herein refer to the declarations attached to the Declaration of Justin D. D'Aloia ("D'Aloia Declaration") and the Declaration of Nicholas I. Porritt ("Porritt Declaration") filed herewith.

- 1 -

substantial recovery for the Settlement Class well within the range of settlements in comparable class actions and eliminates the risks and uncertainties of continued proceedings, including the risk that Defendants could prevail on their pending motions to dismiss, the difficulties associated with securing evidence from a foreign company, and that the Settlement Class could receive nothing, or far less, after summary judgment or trial and any appeal. Plaintiffs and Lead Counsel were fully informed of these strengths and weaknesses at the time they entered into the Stipulation and respectfully submit that the Settlement is fair and reasonable in all respects.

In addition, the Plan of Allocation that will be used to distribute the net proceeds of the Settlement to Settlement Class Members is fair and reasonable. The Plan, which was developed with input from Plaintiffs' damages expert, treats Settlement Class Members equitably and ensures that each Authorized Claimant will receive a *pro rata* share of the proceeds from the Settlement.

Plaintiffs followed the Court-approved notice plan to solicit claims, requests for exclusion, and any objections to the proposed Settlement. As of this Motion, there have not been ***any*** requests for exclusion or objections received from potential Settlement Class Members. As such, the Settlement and Plan of Allocation appear to enjoy unanimous support from the Settlement Class.

Accordingly, Plaintiffs respectfully request that the Court fully and finally approve the proposed Settlement, the Plan of Allocation, and certify the Settlement Class for purposes of the Settlement.

## II.    BACKGROUND

### A.    Relevant Procedural History

The *White* Action was initially filed on September 16, 2020. The complaint asserted claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of all investors who purchased Nano-X securities between August 21, 2020, and September 15, 2020, for alleged misrepresentations in the registration statement that Nano-X filed in connection with its IPO.

Several days later, a substantially identical complaint was filed in *Duarte v. Nano-X Imaging Ltd.*, No. 1:20-cv-4528 (the "*Duarte* Action"). Motions were filed to appoint a lead plaintiff and consolidate *Duarte* with *White*, which was later assigned to the Honorable William F. Kuntz, II.

Daniel McLaughlin commenced this action, the *In re Nano-X* Action, on October 5, 2021. Unlike *White*, the complaint here asserted claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of all investors who purchased or acquired Nano-X securities between June 17, 2021 and August 18, 2021 for statements on topics different than those in the *White* Action. ECF No. 1.

On December 21, 2021, Defendants moved to have all three of the above-referenced actions deemed related under Rule 50.3.1(d) of the Guidelines for the Division of Business Among Judges. *See* ECF No. 18. On January 4, 2022, this Court ruled that the *In re Nano-X* Action was "not sufficiently related to . . . [*White*] and [*Duarte*] to justify reassignment" after consulting with Judge Kuntz and, accordingly, denied the motion.

On January 25, 2022, the Court appointed Davian Holdings as lead plaintiff and approved Pomerantz LLP as lead counsel. ECF No. 22. Following a comprehensive investigation by its counsel that included a review and analysis of publicly available information issued by or about Nano-X and consultation with damages experts, Davian Holdings filed the operative 55-page amended complaint (the "AC") on April 12, 2022. ECF No. 24. As amended, the AC sought to hold Defendants liable under Sections 10(b) and 20(a) of the Exchange Act for statements made between August 21, 2020, and November 17, 2021, which claimed that Nano-X's lead product candidate, known as the Nanox System, (1) could be manufactured for $8,000 to $12,000 per unit; and (2) is functionally equivalent to existing imaging technology. *Id.* The AC further alleged that this fraud was exposed in November 2021 when the market learned that Nano-X received a SEC subpoena and Oppenheimer Equity Research published a research report on these topics. *Id.*

On June 3, 2022, Defendants moved again to consolidate all three matters, this time before

- 3 -

Judge Kuntz, arguing that the amendments in the AC created new overlap with *White/Duarte*. Separately, on July 25, 2022, Defendants moved in the *In re Nano-X* Action to dismiss the claims asserted in the newly-filed AC for failure to state a claim. ECF No. 50. Among other things, Defendants argued that there were no materially false or misleading statements made during the alleged class period and that the AC failed to plead the elements of scienter and loss causation.

On August 30, 2022, Judge Kuntz consolidated *Duarte* with *White*, appointed Edward Ko and Derson Jolteus as co-lead plaintiffs in *White*, and approved their selection of Levi & Korsinsky, LLP as lead counsel in *White*. They filed an amended complaint in the *White* Action on October 31, 2022. As amended, the new complaint in the *White* Action challenged statements made during the same class period as the original complaint regarding Nano-X's entry into revenue-generating distribution agreements and the timing of FDA approval.

On November 3, 2023 Davian Holdings submitted a letter in the *White* Action to explain that the newly-filed complaint confirms that *White* and *In-re Nano-X* arise from separate frauds with distinct substantive issues and that consolidation remains inappropriate. The parties filed several additional letters on the subject. On November 21, 2022, Defendants sought leave in the *White* Action to file a motion to stay pending the outcome of the motion to dismiss in the *In re Nano-X* Action or, alternatively, to file a motion to dismiss in the *White* Action. On December 2, 2022, Judge Kuntz granted Defendants leave only to file a motion to stay in the *White* Action. This motion was fully briefed and submitted as of February 7, 2023.

### B.    The Settlement

#### 1.    Settlement Negotiations and Finalization

In March 2023, Plaintiffs and Defendants recognized that a window opened for settlement discussions and agreed to attempt to resolve the Litigation on a global basis, *i.e.*, both *White* and *In re Nano-X*, as they awaited decisions on the pending motion to consolidate in the *White* Action,

the motion to stay the *White* Action, and the motion to dismiss in the *In re Nano-X* Action.

On April 3, 2023, counsel for the parties participated in a full-day, in-person mediation before experienced mediator Jed Melnick, Esq., of JAMS. In advance, both sides exchanged written mediation statements with exhibits. After extensive discussion and negotiation with active involvement of the mediator, the parties reached an agreement in principle to settle the Litigation for $8,000,000, subject to the execution of settlement papers and approval by the Court. The parties subsequently continued to negotiate a term sheet, which they executed on April 28, 2023.

On May 3, 2023, the parties informed the Court that they agreed in principle to settle the Litigation and requested a temporary stay pending final approval of the settlement. The Court granted the requested stay on May 5, 2023. On June 2, 2023, Lead Plaintiffs in the *White* Action informed Judge Kuntz of their intent to file a stipulation voluntarily dismissing the matter with prejudice upon the entry of a final judgment approving the Settlement in the *In re Nano-X* Action, and requested that the Court stay all proceedings in *White* pending the entry of such a judgment. On June 6, 2023, Judge Kuntz entered an order approving the requested stay in the *White* Action.

### 2.    The Court's Preliminary Approval of the Settlement

On June 2, 2023, Plaintiffs filed an unopposed motion for preliminary approval of the proposed Settlement, together with supporting papers, including a fully executed copy of the Stipulation, which set forth the terms of the Settlement, and all exhibits thereto. ECF Nos. 65-68. Plaintiffs' motion was referred to Magistrate Judge Peggy Kuo. Magistrate Judge Kuo held a hearing on the motion on June 14, 2023, during which the Court directed the parties to revise certain passages in the settlement papers to clarify the posture and relationship of the *White* Action and the *In re Nano-X* Action, as set forth in a minute entry dated June 14, 2023.

On July 6, 2023, Plaintiffs submitted revised settlement papers with the Court. *See* ECF No. 72. As revised, the settlement papers advised potential Settlement Class Members that (i) all

members of the proposed class in the *White* Action are members of the broader class in the *In re Nano-X* Action; (ii) the proposed Settlement Class here fully encompasses the claims asserted on behalf of the proposed class in the *White* Action; and (iii) the parties have agreed to voluntarily dismiss the *White* Action upon the entry of a judgment approving the Settlement in this Action.

On October 31, 2023, the Court entered an Order granting preliminary approval of the Settlement and authorizing notice of the proposed Settlement to potential Settlement Class Members (ECF No. 75) (the "Preliminary Approval Order"). As provided therein, the deadline to submit objections to the Settlement, or to request exclusion from the Settlement Class, is January 25, 2024, and a Settlement Hearing is scheduled for February 15, 2024, at 11:00 a.m. *Id.*

### 3.    Notice And Response of the Settlement Class To Date

In the Preliminary Approval Order, the Court approved the form and content of the Notice, Proof of Claim and Release form, and Summary Notice, and ordered the Claims Administrator, Epiq Global ("Epiq"), to (i) send the Notice and Proof of Claim and Release form to potential Settlement Class Members by first class mail by no later than November 21, 2023; (ii) place a copy of the Stipulation, Notice, and Proof of Claim and Release form on a website dedicated to the Settlement; and (iii) publish the Summary Notice by no later than December 1, 2023. ECF No. 75 at 25-26. The Court further found that these notice procedures "meet the requirements of the Federal Rules of Civil Procedure, 15 U.S.C. § 78u-4(a)(7), due process, and all other applicable laws" and "constitute the best notice practicable under the circumstances." *Id.* at 27.

The notice program approved by the Court has since been carried out. On November 21, 2023, Epiq established the settlement website at www.NanoXSettlement.com, which includes, among other things, the Stipulation, the Preliminary Approval Order, the Notice, the Proof of Claim and Release, and an online claim submission page. *See* Blow Decl. ¶ 13. Epiq commenced its distribution of the Notice on November 21, 2023. *Id.* ¶¶ 4-5. Additionally, Epiq received the

names and addresses of additional Settlement Class Members or requests for additional Notices by numerous nominee holders. *Id.* ¶ 7. In total, 41,872 potential Settlement Class Members were notified of the Settlement by mail or email as of January 10, 2024. *Id.* ¶ 8. On December 1, 2023, Epiq also published the Summary Notice over *PR Newswire*. *Id.* ¶ 9. To date, there have been no objections to any aspect of the Settlement, nor have any Settlement Class Members requested exclusion from the Settlement Class. *Id.* ¶¶ 15-16; D'Aloia Decl. ¶¶ 108, 114, Porritt Decl. ¶ 23.

## III.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED AS A CLASS

Rule 23 allows a party to maintain a class action if the four requirements of Rule 23(a) are satisfied and the matter qualifies as one of the class types under Rule 23(b). The four requirements of Rule 23(a) include numerosity, commonality, typicality, and adequacy. Rule 23(b)(3) allows for class actions when (i) common questions predominate over individual questions, and (ii) a class action is superior to other available methods for resolving the controversy. In its Preliminary Approval Order, the Court preliminarily found that "the prerequisites for a class action under Rules 23(a) and (b)(3) . . . have been satisfied." ECF No. 75 at 23. The Court also stated that "the Court will likely be able to certify the class after the final approval hearing" based on this showing. *Id*. at 20. Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, the Court should grant final certification to this Settlement Class.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

In the Second Circuit, there is a strong public policy in favor of settling disputed claims, especially in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted); *see also Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("The law favors compromise and settlement of class action suits."). The policy in favor of settlements would be well-served by approval of the

Settlement of this complex securities class action, which, absent resolution, could consume years of additional resources of this Court and, likely, the Court of Appeals for the Second Circuit.

### A.    The Standards for Final Settlement Approval

Rule 23(e) provides that a class action settlement must be presented to the Court for approval, and may only be approved if the Court finds it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To guide that assessment, the rule directs the Court to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)  the terms of any proposed award of attorney's fees including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

*Id.* The first two factors focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement. Fed. R. Civ. P. 23(e)(2), advisory committee note to 2018 amendments (the "2018 Advisory Note"). These points of inquiry overlap with the nine *Grinnell* factors that traditionally guided the fairness analysis:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. The 2018 Advisory Note makes clear that the Rule 23(e) factors, which were added to Rule 23 in 2018, were not designed to "displace" any factor previously used by

courts to evaluate such settlements, but rather "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Note. As such, courts agree that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card I*), 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Accordingly, Lead Plaintiffs will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the Rule 23(e)(2) factors and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

As described below, each of these factors supports final approval of the Settlement.

**B.      Plaintiffs and Lead Counsel Adequately Represented the Settlement Class**

In determining whether to approve a class action settlement, the court should consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). In determining the adequacy of representation by class representatives and class counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021) (citation omitted). "An adequate class representative is one who has 'an interest in vigorously pursuing the claims of the class' and 'no interests antagonistic to the interests of other class members.'" *Id.* (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Similarly, "[c]ourts find class counsel qualified when they are experienced and 'knowledgeable in the area of complex class actions.'" *Cymbalista v. JPMorgan Chase Bank, N.A.*, 2021 WL 7906584, at *5 (E.D.N.Y. May 25, 2021) (Bloom, M.J.), *aff'd* (E.D.N.Y. Nov. 22, 2021).

There can be little doubt that Lead Plaintiffs' interests are aligned with other Settlement Class members in vigorously pursuing their claims. As the Court found in the Preliminary

Approval Order, "Lead Plaintiffs Davian Holdings, Derson Jolteus, and Edward Ko's interests are not antagonistic to those of the Settlement Class members," noting that Lead Plaintiffs' claims are similar to the claims of the other Settlement Class Members. ECF No. 75 at 8. Thus, the claims of the Settlement Class and Lead Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiffs and all members of the Settlement Class. *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Plaintiffs were active and informed participants in this Litigation and, among other things: (i) regularly communicated with Lead Counsel regarding the posture and progress of the two Actions; (ii) reviewed pleadings and motions filed in the two Actions; and (iii) and consulted with Lead Counsel on the coordinated settlement discussions and evaluated and approved the proposed Settlement. *See* Ross Decl. ¶ 4, Jolteus Decl. ¶ 4. Plaintiffs took an active role in supervising the litigation, as envisioned by the PSLRA, and their endorsement of the Settlement carries additional weight. See Ross Decl. ¶ 5, Jolteus Decl. ¶ 6.

Similarly, Plaintiffs received advise from highly qualified counsel well-versed in prosecuting complex class actions under the federal securities laws. As detailed more fully in their firm resumes, Co-Lead Counsel have both successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See* Pomerantz Decl. Ex. A; Porritt Decl. Ex. 1.

The Court previously expressed confidence in the abilities of Plaintiffs and Lead Counsel by appointing each to their respective positions. The Court's confidence was well-placed as, since then, they have vigorously pursued the claims asserted and the interests of absent class members. Indeed, in its Preliminary Approval Order, the Court observed that Pomerantz has "ably litigated this case for over two years, including by investigating the alleged fraudulent misrepresentations,

- 10 -

filing the Complaint and Amended Complaint . . . opposing Defendants' Motion to Dismiss, and together with Co-Lead Counsel Levi & Korsinsky, coordinated with the Lead Plaintiffs to explore settlement options for the Settlement Class, including engaging in a successful full-day, in-person mediation after submitting detailed mediation statements. *See* ECF No. 75 at 9. Levi & Korsinsky has similarly investigated alleged misstatements, filed an amended complaint and opposed Defendants' various requests to consolidate and stay the case.

Accordingly, the Settlement Class has been, and remains, well represented.

**C.      The Settlement Negotiations Were Conducted at Arm's-Length and Under the Oversight of an Experienced Mediator**

The second factor under Rule 23(e)(2) considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This turns on "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *11 (E.D.N.Y. Aug. 13, 2021) (Tiscione, M.J.), *aff'd*, 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021). Generally, courts are "hesitant to substitute their judgement for that of the parties who negotiated the settlement" absent "fraud or collusion." *Id.* In this regard, the involvement of a mediator in pre-certification settlement negotiations "helps to ensure that the proceedings were free from collusion and undue pressure." *Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *10 (E.D.N.Y. Feb. 16, 2023) (Pollack, M.J.), *aff'd* (E.D.N.Y. Mar. 10, 2023); *see also Bleton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *3 (S.D.N.Y. Feb. 10, 2022) ("The participation of a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion").

As described above, the Settlement here was achieved after an all-day mediation between well-informed and experienced counsel, under the supervision of Jed Melnick, Esq., of JAMS, a nationally-recognized mediator highly experienced in securities class action litigation. Although

- 11 -

formal discovery had not yet commenced, Lead Plaintiffs and Lead Counsel were fully informed about the strengths and weakness of their claims before entering mediation having spent extensive time investigating the facts before filing the AC, highlighting the unique questions of law and fact presented by their respective cases in formal filings in response to Defendants' repeated requests to consolidate, and briefing Defendants' motion to dismiss, as detailed more fully in the accompanying Declarations. These facts support the conclusion that the Settlement was free from collusion and negotiated at arm's length. *See Rodriguez*, 2023 WL 2184496, at *10 (settlement in securities case during pendency of motion to dismiss before neutral mediator after extensive investigation was fair); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *8-9 (E.D.N.Y. Jan. 21, 2022) (Merkl, M.J.) (same); *Graña y Montero*, 2021 WL 4173684, at *11 (same).

**D.**       **The Settlement Is Fair and Adequate Considering the Costs, Risks, and Delays Continued Litigation**

The Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). "This inquiry overlaps significantly with a number of *Grinnell* factors." *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019). Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Payment Card I*, 330 F.R.D. at 36.

Settlements provide class members with immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate."). The $8 million recovery provided by the Settlement here represents a very favorable result for the Settlement Class. As provided in their preliminary approval papers, Plaintiffs have estimated recoverable damages were approximately $177.7

- 12 -

million. However, the reasonableness of a settlement must be judged not "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)). Thus, the Court need only determine whether the Settlement falls within a "range of reasonableness"—a range which recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in taking any litigation to completion. *Giant Interactive*, 279 F.R.D. at 162 (citations omitted). For this reason, the median recovery in securities class actions in 2022 has been estimated to be 1.8% of the total estimated damages, [2] well below the 4.5% recovery provided by the Settlement here.

As explained below, there were significant uncertainties and risk posed by the prospect of continued litigation, both inherent to complexities of securities litigation and specific to this case, which fully support the reasonableness of the recovery provided by the Settlement here.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

Courts have long recognized that, "[a]s a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015); see also *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]" at the pleading stage. *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (citation omitted).

---

[2] Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, Fig. 19 (NERA Economic Consulting Jan. 24, 2023), https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

"Accordingly, class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) (citation omitted).

This case was no exception. This case involved particularly highly technical underlying subject matter, in addition to the complex issues of proof usually attendant to securities fraud litigation discussed *infra*. The Settlement spares the Settlement Class from years of delay and millions of dollars in expenses, while providing an immediate substantial benefit. Without the Settlement, the Settlement Class would incur substantial costs and engage in prolonged litigation through briefing and a decision on motion to dismiss, class certification, summary judgment, trial, and subsequent appeals. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). Discovery costs, including document production and hosting fees, as well as experts—for class certification, loss causation, damages, and subject-matter—would easily reach into the millions of dollars. The fact that Nano-X is a foreign corporation headquartered in Israel and the majority of the documents and evidence would have been located in Israel and in Hebrew posed further difficulties in terms of access to documents and the need to translate them, as well as for the conducting of depositions and trial.

Further, a trial of the claims here would have required extensive expert testimony on issues related to, among others, the fair value of Nano-X securities, the efficiency of the market, and

- 14 -

damages under the Exchange Act. Courts routinely observe that these sorts of disputes—requiring a "battle of the experts"—are particularly vexing. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "'battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited…"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (noting that "'battle of the experts' as to proper methods of valuation . . . creates a significant obstacle to plaintiffs in establishing liability").

Of course, even if Lead Plaintiffs had prevailed at summary judgment and then trial, securities class actions that do go to trial typically take more than a decade from filing to affirmance on appeal. Indeed, they are so lengthy and so complex that Plaintiffs risk that the law will shift beneath their feet, jeopardizing even seemingly secure victories under then-existing standards. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 53 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (Supreme Court decision after entry of verdict in plaintiffs' favor reduced a billion-dollar verdict into an approximately $78 million recovery); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

In short, a potential recovery for the Settlement Class—if any—would occur years from now after incurring significant costs. By contrast, the Settlement provides an immediate and substantial recovery without the risks, expense, and delays of continued litigation. Thus, the Settlement benefits the Settlement Class by guaranteeing an immediate recovery while sparing Settlement Class Members from millions of dollars in litigation costs.

### 2.    The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. In most cases, this will be the "most important factor." *Id.* at 455.

There were substantial risks here that further prosecution may have yielded limited or no recovery. While Plaintiffs in both Actions believed they had merit, there was a real possibility the Court would grant Defendants' motion to dismiss in the *In re Nano-X* Action, which would make dismissal in the *White* Action also likely. Moreover, even if Plaintiffs survived Defendants' motions to dismiss, they would face significant obstacles in discovery. Because this case concerns complex medical devices and the arcana of FDA approvals, Plaintiffs would have to rely on subject-matter consulting experts to evaluate virtually all the discovery they received, increasing costs and risks. Further, because of the highly technical and complex subject matter, many fact depositions would be as complicated and difficult as expert depositions in other lawsuits.

Lead Plaintiffs had not yet filed a motion for class certification when the parties agreed to settle. In ongoing litigation, Plaintiffs would have had to meet their burdens with respect to class certification by showing that Nano-X Securities traded on an efficient market, entitling class members to the presumption of reliance on Defendants' materially false statements. Under *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), Defendants would have been permitted to rebut the presumption by proving that there was no price impact. Moreover, the law governing certification of securities class actions has been in constant flux, as evidenced by *Halliburton* and the Supreme Court's recent decision in *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021). The Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification through trial and on appeal. *See Ebbert v.*

*Nassau Cnty.*, No. 05-5445, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (Tomlinson, M.J.) (risk of de-certification of the certified class supported approval of Settlement).

Assuming Plaintiffs successfully moved for class certification, which would likely entail extensive expert reports, and managed to secure favorable evidence through very complex discovery, they would have to survive Defendants' motions for summary judgment. Plaintiffs would rely substantially on expert evidence, including evidence to explain the science underlying Nano-X's imaging devices and to prove loss causation and damages. Because Plaintiffs bear the burden of proof, Defendants could win at summary judgment on any number of issues through a well-placed *Daubert* motion. Moreover, Plaintiffs need to adduce sufficient evidence to prove scienter, which is "often the most difficult and controversial aspect of a securities fraud claim." *Graña y Montero*, 2021 WL 4173684, at *13. Indeed, "[p]roving a defendant's state of mind is hard in any circumstances." *Telik*, 576 F. Supp. 2d at 579; *see also Pearlstein*, 2022 WL 4554858, at *5 (proving scienter is "inherently difficult"). There is no doubt that Defendants would continue to advance numerous scienter arguments that posed very significant hurdles to proving that they acted with an intent to commit securities fraud or with severe recklessness.

Finally, Plaintiffs would have to present their case to a jury. These are difficult cases to try from plaintiffs' perspective. As noted, overall, Defendants would likely seek to appeal to a jury's sympathy, arguing that they are developing a more accessible and affordable diagnostic imaging device for those currently without access to such technology, due to the cost and complexity of current imaging systems. Even to explain why the Defendants' statements are false, Plaintiffs would have to explain and compare the capabilities of various medical imaging devices, their component parts, and the regulatory approval process. Plaintiffs would also need the jury to credit their experts to prove loss causation and damages, adding another layer of uncertainty. *See In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *11 (E.D.N.Y. Jan. 4, 2024) (proving loss causation "is a

complicated concept" and "typically involves conflict expert opinion about the difference between the purchase price and the stock's 'true' value") Plaintiffs would rely on their experts, but Defendants would counter with their own. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts.").

As courts have long recognized, the substantial uncertainty as to which side's experts might be credited by a jury presents a serious litigation risk. *Telik*, 576 F. Supp. 2d at 579-80 (in this "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…"). With a battle of the experts over complex subject-matter, jury confusion would be a significant danger for Plaintiffs, which could lead jurors to simply conclude that Plaintiffs had not sufficiently proven they were entitled to relief. *See, e.g.*, *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues–which involve complex financial concepts–would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *see also Graña y Montero*, 2021 WL 4173684, at \*13 ("conflicting expert testimony" on damages in securities case creates great uncertainty that favors an immediate settlement).

Even if they prevailed at trial, Plaintiffs would have to survive Defendants' inevitable appeals. This case would generate more than its share of appellate issues because it relies so heavily on complex expert matters. Reversal of the Court's decision on any expert matter could upset the judgment the Settlement Class had spent time and money securing. The Settlement avoids these risks and provides the Settlement Class with an immediate and guaranteed recovery.

The risks and costs associated with establishing liability and damages at trial and appeal thus weigh in favor of approving the Settlement. Given all of these risks with respect to liability,

loss causation, and damages, Lead Plaintiffs respectfully submit that the substantial and immediate benefits conferred by the Settlement are in the best interests of the Settlement Class.

### E. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other agreements; and (iv) whether the settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D). These factors also support approval here.

### 1. The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2)(C)(ii), the court must "scrutinize the method of claims processing to ensure that it facilitates the filing of legitimate claims." Fed. R. Civ. P. 23, 2018 Advisory Note, subdiv. (e)(2). A claims processing method should "deter or defeat unjustified claims" but not be "unduly demanding." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card II*), 2019 WL 6875472, at *20 (E.D.N.Y. Dec. 26, 2019) (quoting 2018 Advisory Note), *aff'd*, 62 F.4th 704 (2d Cir. 2023).

Here, the method for processing claims follows well-established and effective procedures. Claims will be processed with the assistance of an experienced Claims Administrator. Settlement Class Members must provide basic personal information and trading records to substantiate their transactions in Nano-X securities. Requiring such documentation is reasonable because "there is no central repository of the owners of the securities" and it "prevent[s] fraudulent claims." *Beltran v. SOS Ltd.*, 2023 WL 319895, at *7 (D.N.J. Jan. 3, 2023) (Pascal, M.J.), *aff'd*, 2023 WL 316294 (D.N.J. Jan. 19, 2023). In addition, Claimants have the opportunity to cure any deficiencies or request that the Court review any Claim denial (Stipulation ¶¶ 5.6, 5.7). Each Authorized Claimant's *pro rata* share of the Net Settlement Fund will be determined by the Claims

- 19 -

Administrator by determining their Recognized Losses as set forth in the Plan of Allocation. These procedures are "consistent with many other securities class action settlements." *3D Sys.*, 2024 WL 50909, at *13 (citations omitted); *see also PPDAI Grp.*, 2022 WL 198491, at *13 (same).

### 2. The Requested Attorneys' Fees Are Reasonable

As discussed in Plaintiffs' accompanying memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, Lead Counsel's request for one-third of the Settlement Amount, or $2,666,666.67, plus interest, is fair and reasonable and in line with settlements approved in like cases in the Second Circuit. With respect to timing of the fee payment, any attorneys' fees awarded will be paid to Lead Counsel upon the entry of the Judgment or order awarding such fees, subject to the obligation to repay if the fee award is subsequently reduced or the Settlement does not become Effective. Stipulation ¶ 6.2. However, because this is an all-cash settlement which has already been fully funded, there is no risk that counsel will be paid but Settlement Class Members will not. Importantly, the Settlement may not be terminated based on a ruling regarding attorneys' fees. This further supports approval. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *9.

### 3. The Parties Have No Other Agreements Other Than the Previously Disclosed Agreement to Address Requests for Exclusions

As discussed in the motion for preliminary approval, and the Notice to potential Settlement Class Members, the Parties have entered a supplemental agreement which provides Defendants with the right to terminate the Settlement in the event that valid requests for exclusion from the Settlement Class exceed certain criteria provided therein. As other courts have recognized, "[t]his type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 6, 2019); *see also 3D Sys.*, 2024 WL 50909, at *13 ("[T]he supplemental agreement does not pose an impediment to final approval of the settlement."). The terms are kept confidential "to avoid

creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement." *PPDAI Grp.*, 2022 WL 198491, at *13.

### 4. Settlement Class Members Will Be Treated Equitably

As set forth in Part V, each Settlement Class Member who properly submits a valid Claim will receive a *pro rata* share of the Settlement proceeds based on their relative investment losses. This treats class members fairly relative to one another. *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (E.D.N.Y. Nov. 30, 2021) (Parker, M.J.) (class members are "treated equitably" when they "receive a pro rata share of the Net Settlement Fund" based on relative losses); *see also Graña y Montero*, 2021 WL 4173684, at *15 (same).

### F. Application of the Remaining *Grinnell* Factors Supports Approval

### 1. The Ability of Defendants to Withstand a Greater Judgment

Nano-X is developmental-stage startup with "limited operating history" that "will need to obtain additional financing to implement" its business plan. In its latest annual report, Nano-X warned that "[w]e have a history of net losses and negative cash flow from operations since inception and we expect such losses and negative cash flows from operations to continue in the foreseeable future."[3] Without the Settlement, Plaintiffs would likely not be able to secure a judgment, if at all, for several years. In that time, Nano-X might well lose access to capital markets and its solvency is by no means assured. The potential inability of Defendants to withstand a greater judgment over the course of this litigation supports approval. *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *5 (E.D. Pa. Sept. 16, 2021) (fact that biotech company had no FDA approved products or revenues at time of settlement supported approval); *see also Copley v. Bactolac Pharm., Inc.*, 2023 WL 2470683, at *9 (E.D.N.Y. Mar. 13, 2023) (similar for company

---

[3] *See* Nano-X Imaging Ltd., Annual Report on Form 20-F (May 1, 2023), available at https://investors.nanox.vision/node/7636/html.

whose outlook was "questionable"). Nevertheless, even if it could, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

### 2.   The Reaction of the Settlement Class to Date

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012). Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator has mailed over 40,000 copies of the Notice and Proof of Claim and Release form to potential Settlement Class Members and/or their nominees made copies of these materials public through several different sources. *See* Blow Decl. ¶¶ 3-14. While the deadline set by the Court for Settlement Class Members to object (January 25, 2024) has not yet passed, the fact that there have been no objections or requests for exclusion weighs strongly in favor of final approval. *See Charles v. Opinion Access Corp.*, 2020 WL 9812930, at *4 (E.D.N.Y. Mar. 13, 2020) (fact that "most class members have neither objected to nor opted out of the settlement" supports approval). To the extent there are any objections to the Settlement after this filing, they will be addressed in Plaintiffs' reply.

### 3.   The Stage of the Proceedings and Maturity of the Issues Support Approval

This *Grinnell* factor examines "whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement." *Parker v. Time Warner Ent. Co.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009), *aff'd*, 378 F. App'x 63 (2d Cir. 2010). That there has been no "formal discovery" is not dispositive. *PPDAI Grp.*, 2022 WL 198491, at *10; *see also IMAX*, 283 F.R.D. at 190 ("[F]ormal discovery need not have necessarily been undertaken yet."). Rather, this factor supports approval in cases settled during the pendency of a motion to dismiss where "Plaintiffs' counsel have thoroughly investigated the strengths and weaknesses of the claims and conducted

extensive legal research in responding to the motion to dismiss." *3D Sys.*, 2024 WL 50909, at *10; *see also Rodriguez*, 2023 WL 2184496, at *15 (similar). Such is the case here.

As set out above and detailed more fully in the D'Aloia and Porritt Declarations, before reaching the Settlement, Plaintiffs (i) conducted a lengthy investigation by reviewing and analyzing a copious amount of public information issued by or about Nano-X, including SEC filings and analyst reports; (ii) hired an investigator to interview witnesses abroad; (iii) consulted with various experts; (iv) drafted a detailed amended complaints; engaged in legal research to effectively respond to Defendants' motions to dismiss and consolidate; and (v) participated in a full-day mediation before an experienced mediator to reach a mutual resolution of the Litigation.

Thus, Plaintiffs respectfully submit that "the parties settled after developing an appreciation of their relative positions." *Rodriguez*, 2023 WL 2184496, at *15.

## V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

As set forth in the Notice, the Net Settlement Fund will be divided among Settlement Class Members who submit valid Claims pursuant to the Plan of Allocation. A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is "fair and adequate." *See Payment Card II*, 2019 WL 685472, at *20. "Numerous courts have held that a plan of allocation need not be perfect." *Graña y Montero*, 2021 WL 4173684, at *15 (citation omitted). Rather, an allocation formula that has a "reasonable, rational basis" satisfies this requirement, "particularly if recommended by experienced and competent class counsel." *Id.* (citation omitted). Generally, a plan that reimburses class members based on the relative value of their claims is reasonable. *See Signet Jewelers*, 2020 WL 4196468, at *13 (citations omitted).

As described in the Notice, the Plan of Allocation was developed with the assistance of Lead Counsel's experts. The Plan of Allocation is based upon the premise that Settlement Class Members sustained damages by purchasing their Nano-X securities at artificially inflated prices,

consistent with the allegations in the Litigation. Each claimant will receive a *pro rata* share of the Net Settlement Amount based on the amount of their relative losses. The Claims Administrator shall determine each Settlement Class Member's share of the Net Settlement Fund based upon the recognized loss formula. The formula for calculating a recognized losses dependd upon several factors, including when the shares were purchased or otherwise acquired and in what amounts, whether the shares were ever sold, and, if so, when they were sold and for what amounts.

By using a methodology to ratably allocate the Net Settlement Fund to Authorized Claimants "based on the relative size of their Recognized Claims," the Plan of Allocation is fair and reasonable. *Pearlstein*, 2022 WL 4554858, at \*8; *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."). Indeed, recent decisions recognize that such a plan is "consistent" with standard practice in securities settlements. *Lea*, 2021 WL 5578665, at \*11; *Rodriguez*, 2023 WL 2184496, at \*12; *Graña y Montero*, 2021 WL 4173684, at \*16. Accordingly, Co-Lead Counsel believe that the Plan of Allocation provides a fair and reasonable means to equitably allocate the Net Settlement Fund. *See Giant Interactive*, 279 F.R.D. at 163 ("[I]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel") (citation omitted).

Moreover, as noted above, no objections to the proposed Plan have been received. For all these reasons, the Plan of Allocation should be approved.

## VI.   CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, approve the proposed Plan of Allocation, and finally certify the Settlement Class for purposes of the Settlement only. Proposed orders will be submitted with the reply papers, after the deadlines for objecting or seeking exclusion have passed.

Dated: January 11, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/* Justin D. D'Aloia
Jeremy A. Lieberman
Justin D. D'Aloia
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Lead Plaintiff Davian Holdings and Co-Lead Counsel for the Settlement Class*

**LEVI & KORSINSKY, LLP**

/s/ Nicholas I. Porritt
Nicholas I. Porritt
Shannon Hopkins
Adam M. Apton
Max E. Weiss
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone:  (212) 363-7500
Facsimile:   (212) 363-7171
nporritt@zlk.com
shopkins@zlk.com
aapton@zlk.com
mweiss@zlk.com

*Counsel for Lead Plaintiffs Derson Jolteus and Edward Ko and Co-Lead Counsel for the Settlement Class*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Davian Holdings*

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2024, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.

 /s/ Justin D'Aloia
Justin D'Aloia
