**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NANO-X SECURITIES LITIGATION | Case No. 1:21-cv-05517-RPK-PK<br><br><br>Hon. Rachel P. Kovner<br><br>Hon. Magistrate Judge Peggy Kuo |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S**
**UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     BACKGROUND ............................................................................................3

III.    THE REQUESTED FEE AWARD IS FAIR AND REASONABLE ................................4

        A.      The Settlement Creates a Common Fund From Which a Percentage-of-
                the-Fund Fee Award Is Appropriate ........................................................4

        B.      Relevant Factors Confirm That the Fee Requested Is Reasonable ..........................6

                1.      Co-Lead Counsel Expended Significant Time and Labor ...........................6

                2.      The Magnitude, Complexity, and Risk of Litigation Favor the
                        Award ..............................................................................8

                3.      The Settling Parties Were Represented by High-Caliber Counsel ............11

                4.      The Requested Fee in Relation to the Settlement Is Reasonable ..............13

                5.      Public Policy Considerations Support the Requested Fee ........................14

        C.      A Lodestar Cross-Check Confirms That the Requested Fee Is Reasonable ..........15

        D.      The Fee Request Is Consistent With the Market Rate Negotiated by
                Plaintiffs ............................................................................17

IV.     CO-LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................18

V.      THE AWARDS TO PLAINTIFFS SHOULD BE APPROVED ....................................19

VI.     CONCLUSION..............................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amgen Inc. v. Ct. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)...................................................................................................15

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...............................................................................13

*Athale v. Sinotech Energy Ltd.*,
   2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)...................................................16, 19

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)...................................................................................................15

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).....................................................................................................4

*Burns v. FalconStor Software, Inc.*,
   2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ............................................... *passim*

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)......................................................................................4, 5

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................... *passim*

*DeValerio v. Olinski*,
   673 F. App'x 87 (2d Cir. 2016) ..................................................................................6

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
   62 F.4th 704 (2d Cir. 2023) (Jacobs, J., concurring) ..................................................5

*Flores v. Anjost Corp.*,
   2014 WL 321831 (S.D.N.Y Jan. 29, 2014) ..............................................................14

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................... *passim*

*Gong v. Neptune Wellness Solutions*,
   2023 WL 6594352 (E.D.N.Y. July 18, 2023)...........................................................13

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ................................................................................13

*In re 3D Sys. Sec. Litig.*,
   2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ...................................................... *passim*

*In re Akazoo S.A. Sec. Litig.*,
   2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ........................................................................14

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................................10

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) .........................................................................11

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ................................................................. *passim*

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...................................................................................................9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ...........................................................................8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................................................15, 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................20

*In re Gilat Satellite Networks, Ltd.*,
   2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .............................................................5, 18, 20

*In re Graña y Montero S.A.A. Sec. Litig.*,
   2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021)................................................................. *passim*

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
   2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018)...........................................................................14

*In re Jumia Techs. S.A. Sec. Litig.*,
   Case No. 19 Civ. 4397 (PKC), ECF No. 128 (S.D.N.Y. Mar. 24, 2021) ................................17

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................12, 19, 20

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008)...................................................................................................17

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................................... *passim*

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   2019 WL 5882171 (S.D.N.Y. Nov. 6, 2019).........................................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................13

*In re Quidian Inc. Sec. Litig.*,
   2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...............................................................14

*Karic v. Major Auto. Cos.*,
   2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ...........................................................13

*Karimi v. Deutsche Bank Aktiengesellschaft*,
   No. 22 Civ. 2854 (JSR), ECF No. 110 (S.D.N.Y. Feb. 26, 2023) .............................17

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y Jan 20, 2010) (Carter, Jr., M.J.)..................................14

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) (Parker, M.J.).............................14, 20

*Lyons v. Litton Loan Servicing LP*,
   No. 1:13-cv-00513-ALC-HBP, slip op. (S.D.N.Y Aug. 15, 2016.) (Carter, J.) ......14

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)........................................................................................5

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) .............................................................13

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)...................................................................................................16

*Pirnik v. Fiat Chrysler Autos. N.V.*,
   No. 15 Civ. 7199 (JMF), ECF No. 369 (S.D.N.Y. Sept. 5, 2019) ...........................17

*Ret. Assoc. v. Isaacson/Weaver Family Trust*,
   925 F.3d 63 (2d Cir. 2019)...........................................................................................4

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)................................................... *passim*

*Rosenfeld v. Lenich*,
   2022 WL 2093028 (E.D.N.Y. Jan. 19, 2022) ...........................................................13

*Rosi v. Aclaris Therapeutics, Inc.*,
   2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) .............................................................16

*Too v. Rockwell Med., Inc.*,
   2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020)...........................................................17

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..........................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..............................................................................4, 5, 15

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................5, 19

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................................4

**Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
    and Procedure § 1803 (3d ed. 2005) ...........................................................................4

Cornerstone Research, *Securities Class Action Filings, 2022 Year in Review* ................................9

Court-appointed Lead Plaintiff Davian Holdings Limited ("Davian Holdings"), together with additional plaintiffs Derson Jolteus, and Edward Ko (collectively, "Plaintiffs"), and their Court-approved counsel, Pomerantz LLP and Levi & Korsinsky, LLP (together, "Co-Lead Counsel"), respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees and litigation expenses, and awards to Plaintiffs.[1]

## I.    PRELIMINARY STATEMENT

After almost three years of investigation, litigation, motion practice, and arm's length negotiation, Plaintiffs are pleased to present for the Court's approval a Settlement that recovers $8 million for the Settlement Class in exchange for the release of all claims that were or could have been brought in this Action, including all claims asserted in the *White* Action pending in this Court. The Settlement is part of a global agreement reached among the parties in the *In re Nano-X* and *White* Actions, and the result of a comprehensive assessment of the strengths and weaknesses of the claims asserted by Plaintiffs in both actions and the significant cash consideration payable under the Settlement to purchasers and acquirers of Nano-X securities during the Settlement Class Period.  Co-Lead Counsel have not received any compensation for this case while litigating it even as they risked attorney time and money. They now ask the Court to award attorneys' fees of one-third of the Settlement Amount, or $2,666,666.67, reimbursement of their out-of-pocket litigation expenses and modest awards to Plaintiffs for representing the Settlement Class.

Defendants had substantial defenses to liability. The Settlement will eliminate the risk and uncertainty of continued proceedings, particularly the risks of prevailing on Defendants' motion to dismiss in the *In re Nano-X* Action, which would make dismissal in the *White* Action also likely,

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation of Settlement, dated June 2, 2023 (ECF No. 67-1) (the "Stipulation"). All declarations cited herein refer to those attached to the Declaration of Justin D. D'Aloia ("D'Aloia Declaration") and the Declaration of Nicholas I. Porritt ("Porritt Declaration") filed herewith. Plaintiff Edward Ko is unable to submit a declaration due to travel. He will do so as soon as possible.

as well as the difficulties associated with securing evidence from a foreign company required to prove the claims asserted. Even if Lead Plaintiffs survived Defendants' motion(s) to dismiss, the Parties would then face a lengthy and expensive discovery process in a case whose allegations revolve around complex medical equipment technology, briefing of class certification and summary judgment motions, and establishing both Defendants' liability and loss causation at trial with an uncertain outcome.

In the face of these hurdles—as well as the fully contingent nature of the case—Co-Lead Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel.  Among the other work detailed in the accompanying Declarations, Co-Lead Counsel: (i) conducted a robust international investigation to prepare the case for filing, which involved identifying and interviewing former employees that were familiar with the Company and others with potentially relevant knowledge, and additional extensive investigation after the appointments of lead plaintiff to amend the complaints in the two Actions, which included consulting with experts and hiring an investigator to interview witnesses on multiple continents; (ii) drafted and filed comprehensive amended complaints; (iii) researched and drafted an opposition to Defendants' motion to dismiss in the *In re Nano-X* Action; (iv) briefed and argued several motions to have the Actions deemed related, be consolidated, and stayed; (v) engaged in numerous meet-and-confers; (vi) prepared mediation briefs; (vii) participated in a full-day, in-person mediation session before experienced mediator Jed Melnick, Esq., of JAMS; and (viii) engaged in subsequent negotiations regarding the terms of the proposed Settlement.

Against this backdrop, Co-Lead Counsel request a fee of 33% of the Settlement Amount, which would represent a reasonable lodestar "multiplier" of approximately 2.44, payment of litigation expenses in the amount of $91,076.19, and awards to Plaintiffs of $3,000 each, totaling $9,000, for the time and resources they dedicated to diligently representing the Settlement Class.

As demonstrated below, in view of the complexity of the issues and the results obtained, the requested awards should be approved as well. The 33% fee request is consistent with the percentage-of-the-fund method favored in the Second Circuit for common fund settlements like the Settlement here. Among other things, fees equal to one-third of the common fund are regularly granted in complex and hard-fought securities class actions settled in a similar procedural posture. In addition, a lodestar cross-check shows that the fee request falls squarely within the range deemed to be acceptable for suits of this type. What is more, Co-Lead Counsel have not received *any* objections to their fee or expense requests after providing notice to the Settlement Class, which further demonstrates that the fee request is reasonable under the circumstances of this case.

Finally, courts routinely allow counsel to recover their litigation expenses and grant awards to named plaintiffs for their time and expenses acting as representatives for absent class members, both of which are appropriately documented in the attached declarations. These amounts were also disclosed in the Notice sent out to potential Settlement Class Members and no objections thereto have been received to date.

For the following reasons, Co-Lead Counsel respectfully submit that their efforts and the results achieved in the Litigation justify the requested fees and expenses, and request that the Court grant (i) the request for attorneys' fees; (ii) the request to reimburse Co-Lead Counsel for their out-of-pocket litigation expenses; and (ii) the request for awards to Plaintiffs.

II.     BACKGROUND

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in Part II of the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, filed concurrently herewith and incorporated by reference herein.

## III.    THE REQUESTED FEE AWARD IS FAIR AND REASONABLE

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). It is well established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (same). The authority to award such fees from the common fund is rooted in the Court's "historic power of equity." *Fresno Cnty. Emps.' Ret. Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 68 (2d Cir. 2019) (citation omitted); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1803, at 325 (3d ed. 2005) (explaining equitable basis of common fund doctrine). The proper amount of attorneys' fees to award rests within the sound discretion of the court. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, Co-Lead Counsel request attorneys' fees in the amount of one-third (33%) of the Settlement Amount, totaling $2,666,666.67, plus interest earned on that amount at the same rate and for the same period as that earned by the Settlement Fund. As provided in the Stipulation, Co-Lead Counsel will allocate the attorneys' fees among Plaintiffs' Counsel in a manner which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation. This request is fair and reasonable, and well within the range of fees typically awarded in similar class actions. For all the reasons set forth below, Co-Lead Counsel respectfully requests that these attorneys' fees and expenses be approved.

### A.    The Settlement Creates a Common Fund From Which a Percentage-of-the-Fund Fee Award Is Appropriate

Attorneys' fees in common fund cases may be awarded using either the percentage of the fund ("POF") method or the "lodestar" method. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396

F.3d 96, 121 (2d Cir. 2005). POF simply refers to a percentage of the settlement fund, whereas the lodestar approach multiplies hours reasonably expended against a reasonable hourly rate, subject to further adjustment based on less objective factors. *See Cent. States*, 504 F.3d at 229.

The Second Circuit first endorsed the POF method in *Goldberger*, 209 F.3d at 49-50. Since then, the "trend" in this Circuit has been to award fees in common fund cases using the POF, as opposed to the lodestar, method. *Wal-Mart*, 396 F.3d at 122; *accord Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 729 (2d Cir. 2023) (Jacobs, J., concurring). This is because the POF method compels counsel to "share in both the upside and downside risk of litigation," thus aligning the interests of counsel with those of the class. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010). In contrast, the lodestar method "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in gimlet-eyed review of line-item fee audits."  *Wal-Mart*, 396 F.3d at 121.

In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA") expresses the POF approach as the standard for fees in securities cases by providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *13 (E.D.N.Y. Feb. 16, 2023) (Pollack, M.J.) (15 U.S.C. § 78u-4(a)(6) supports use of POF in securities case), *aff'd* (E.D.N.Y. Mar. 10, 2023); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007) (using POF "comports" with the PSLRA in securities cases).

As such, courts consistently apply the POF approach in securities class actions settled through the creation of a common fund. *See, e.g.*, *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *14 (E.D.N.Y. Jan. 4, 2024); *Rodriguez*, 2023 WL 2184496, at *13; *In re PPDAI Grp. Inc. Sec. Litig.*,

2022 WL 198491, at *15 (E.D.N.Y. Jan. 21, 2022) (Merkl, M.J.); *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *16 (E.D.N.Y. Aug. 13, 2021) (Tiscione, M.J.), *aff'd*, 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021); *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *9 (E.D.N.Y. Apr. 11, 2014) (Pollack, M.J.), *aff'd* (E.D.N.Y. May 8, 2014).

The Settlement here establishes an all-cash common fund in exchange for the release of claims governed by the PSLRA. Thus, Co-Lead Counsel's application for a POF fee award is consistent with the law of this Circuit.

### B.    Relevant Factors Confirm That the Fee Requested Is Reasonable

Regardless of which method is used, the fees requested must be "reasonable" under the circumstances. *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016). This inquiry is guided by the six factors established by the Second Circuit in *Goldberger*, 209 F.3d at 50, including:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

As discussed below, each of these factors supports the requested fee here.

### 1.    Co-Lead Counsel Expended Significant Time and Labor

Co-Lead Counsel has expended a substantial amount of time and effort pursuing this Litigation on behalf of the Settlement Class. Since its inception over three years ago, Co-Lead Counsel has devoted more than 1,600 hours to this Litigation, for an aggregate lodestar of $1,092,221.25 in unreimbursed professional time. D'Aloia Decl. ¶ 6, Porritt Decl. ¶ 25.

As detailed more fully in the accompanying Declarations, among other things, Co-Lead Counsel:  (a) performed a preliminary investigation into the legal and factual bases for potential claims against Defendants before drafting and filing the initial complaint; (b) filed lead plaintiff applications; (c) negotiated and filed a joint stipulation accepting service and setting deadlines for case activity following the appointent of a lead plaintiff; (d) opposed Defendants' letter request

to have this Action and the *White* Action deemed related under Rule 50.3.1(d) of the Guidelines for the Division of Business Among Judges; (e) negotiated and filed joint schedules for the filing of an amended complaint and any motion to dismiss; (f) performed a comprehensive investigation into the legal and factual bases for potential claims against Defendants, which investigation included  a review and analysis of Nano-X's filings with the SEC and other publicly available material related to the Company, including news articles, analyst reports, press releases, investor presentations, interviews of individuals with relevant knowledge on multiple continents with the aid of a private investigator, and consultation with experts, all of which allowed Co-Lead Counsel to expand the operative class period and/or scope of the claims; (g) prepared and filed lengthy and comprehensive amended complaints; (h) researched and drafted an opposition brief in response to Defendants' motion to consolidate; (i) researched and drafted an opposition brief in response to Defendants' motion to dismiss; (j) prepared and filed responses to Defendants' pre-motion letters with respect to motions to dismiss and/or stay; (k) prepared and submitted written mediation statements concerning the facts of the case, liability, and damages, together with supporting exhibits; (l) submitted letters addressing the impact of the amended pleadings on the pending motion to consolidate; (m) participated in a full-day, in-person mediation session overseen by a neutral mediator; and (n) engaged in various post-mediation activities with Defendants' counsel to memorialize and effectuate the settlement.

Throughout the litigation, Co-Lead Counsel's efforts focused on advancing the Litigation to bring about the most successful outcome for the Settlement Class, whether through settlement or trial, by the most efficient means possible. Co-Lead Counsel's significant efforts and achievement of a highly favorable settlement favor the requested fee award. *See 3D Sys.*, 2024 WL 50909, at *14 (time spent over two years to litigate motions to dismiss and engage in extensive settlement negotiations with a mediator supported 33% fee award); *PPDAI Grp.*, 2022 WL

- 7 -

198491, at *15 (same); *Burns*, 2014 WL 12917621, at *9 (same). Moreover, Co-Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Co-Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Final Approval Hearing, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. Co-Lead Counsel will seek no additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).

### 2.   The Magnitude, Complexity, and Risk of Litigation Favor the Award

In the Second Circuit, the risk of success is "perhaps the foremost" factor to be considered in determining a reasonable award. *Goldberger*, 209 F.3d at 54 (citation omitted). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (citation omitted). Co-Lead Counsel has prosecuted this class action Litigation on a fully contingent basis. D'Aloia Decl. ¶ 98; Porritt Decl. ¶ 28. In other words, they advanced attorney time and money "with no guarantee of recovery of fees or expenses." *Rodriguez*, 2023 WL 2184496, at *14. Courts have long recognized that the risk of non-payment associated with a contingency arrangement is an important factor in determining an appropriate fee award. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also 3D Sys.*, 2024 WL 50909, at

- 8 -

*14 (contingent fee risk weighs in favor of 33% fee award); *Rodriguez*, 2023 WL 2184496, at *14 (same).

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing fee award where trial court failed to account for risk of underpayment). Here, Co-Lead Counsel pursued claims on behalf of the Class for more than three years, with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, it dedicated substantial attorney and professional resources to the prosecution of the litigation. Co-Lead Counsel also advanced over $91,076.19 in out-of-pocket expenses with no guarantee that those expenses would ever be reimbursed. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is thus far greater than on a firm that is paid on an ongoing basis.

Here, the complexity of the issues magnified these risks. "Shareholder actions are notoriously complex and difficult to prove." *Rodriguez*, 2023 WL 2184496, at *14 (quoting *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008)); *see also City of Providence*, 2014 WL 1883494, at *5 (same). Indeed, "securities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]" at the pleading stage. *Comverse*, 2010 WL 2653354, at *5. Indeed, the high rate of dismissals in securities class actions demonstrates the risks involved as compared to the prospects for success. Cornerstone reports that of securities class actions filed from 2015 through 2022, an average of 52.2% of cases have been dismissed.[2] And, according to NERA, the rate of dismissal in securities class actions has steadily increased over time: in 2012, a little over one third of cases were dismissed, whereas in 2022

---

[2] Cornerstone Research, *Securities Class Action Filings, 2022 Year in Review*, at p.22 fig. 21.

almost half of the cases filed were dismissed.[3] Plaintiffs faced that considerable risk here.

Further, Defendants would have continued to argue that even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter—*i.e.*, that Defendants misled investors knowingly or recklessly—could be proven. The scienter requirement is commonly regarded to be "the most difficult and controversial aspect of a securities fraud claim." *Graña y Montero*, 2021 WL 4173684, at *13. Here, Defendants were adamant that they had no intent to deceive.

Another considerable risk is whether Plaintiffs could ultimately prove that the Class was damaged by the alleged misrepresentations and the amount of those damages. At trial, this would come down to "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants used to minimize the Settlement Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267-68 (S.D.N.Y. 2012) (noting that in a battle of the experts "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses") (citation omitted). Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could have been only a fraction of the damages claimed.

This case also involved highly technical underlying subject matter requiring proof from abroad, in addition to the complex issues of proof usually attendant to securities fraud litigation. Plaintiffs faced the risk they would be unable to secure any evidence, or sufficient evidence, to adequately prove their claims, or that a jury would understand such evidence. Moreover, even if Plaintiffs proceeded to trial and achieved an award higher than the Settlement, there was a

---

[3] NERA Economic Consulting (McIntosh, Starykh, and Flores), *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, January 24, 2023, at 9.

- 10 -

substantial risk that victory would be illusory and the award uncollectible. In assessing the Settlement, Plaintiffs and Co-Lead Counsel considered Nano-X's status as a development-stage company with limited products and cash flow. Accordingly, the magnitude, complexity, and risks of the Litigation support the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 3.    The Settling Parties Were Represented by High-Caliber Counsel

The result achieved and the quality of the services provided are important factors for courts to consider in determining reasonable attorneys' fees under a POF analysis. *See Goldberger*, 209 F.3d at 50. Despite the significant risk to recovery in this Action, Co-Lead Counsel successfully obtained a substantial $8 million all-cash settlement for the benefit of the Settlement Class. Co-Lead Counsel estimates that this represents approximately 4.5% of estimated maximum class-wide damages, comfortably in the range of historic averages,[4] early in the Litigation before substantial costs were incurred.

The experience of lead counsel is relevant in making this determination. *See 3D Sys.*, 2024 WL 50909, at *15 (observing that "lead counsel possess substantial experience litigating complex securities class actions"); *see also, e.g.*, *PPDAI Grp.*, 2022 WL 198491, at *16 (same); *Graña y Montero*, 2021 WL 4173684, at *18 (same). As their firm resumes demonstrate, Co-Lead Counsel has extensive experience in the specialized field of securities litigation, having securities historic settlements for investors in such matters. *See* D'Aloia Decl. Ex. A; Porritt Decl. Ex. 1. Co-Lead Counsel leveraged this experience to successfully negotiate the Settlement on terms favorable to the Settlement Class.

---

[4] *See, e.g., In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade … have ranged from 3% to 7% of the class members' estimated losses").

- 11 -

The quality of and vigor of opposing counsel is also important in evaluating the services rendered. *See Burns*, 2014 WL 12917621, at * 10 (fact that "defendants were represented by . . . experienced counsel who provided high quality, vigorous opposition" supported fee request); *see also Rodriguez*, 2023 WL 2184496, at *14 (similar). This Litigation was vigorously contested every step of the way by Defendants, who were ably represented by highly-qualified attorneys from Skadden, Arps, Slate Meagher & Flom LLP, one of the world's premier law firms with an exemplary securities litigation practice. That Co-Lead Counsel secured an $8 million settlement under these circumstances before entering into formal discovery demonstrates "the skill with which the cases were prosecuted." *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010); *see also City of Providence*, 2014 WL 1883494, at *17 (similar).

Indeed, the positive reaction by Class Members confirms the quality of Co-Lead Counsel's representation. To inform potential Settlement Class Members about the Settlement, the Claims Administrator mailed 41,872 copies of the Notice and Proof of Release and Claim form to potential Settlement Class Members and/or their nominees, posted these materials on a case-specific website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice on the *PR Newswire*. *See* Blow Decl. ¶¶ 8-10. The Notice informed Settlement Class Members about the nature and history of the Litigation, specified the Settlement Amount, disclosed that Co-Lead Counsel would seek attorneys' fees of up to one-third of the Settlement Amount and advised them of the right to object to the award and to request exclusion from the Settlement Class. *See* Blow Decl. Ex. A. To date, there have not been *any* objections to the fee award or requests for exclusion from the Settlement Class. *See* D'Aloia Decl. ¶ 105. That such a positive reaction followed the mailing of over 40,000 Notice packets provides powerful support for the requested fees. *See MetLife*, 689 F. Supp. 2d at 364 (fact that there were "[n]o relevant objections to class counsel's joint application for fees" supports the award); *see also Vaccaro v.*

- 12 -

*New Source Energy Partners L.P.*, 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (same for 33.33% fee award).

### 4.      The Requested Fee in Relation to the Settlement Is Reasonable

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3 (citation omitted). As explained below, Co-Lead Counsel's request for one-third (33%) of the Settlement Amount is fully consistent with the POF awards granted in similar cases in this Circuit.

As general matter, it is widely recognized that a 33% fee is "very common . . . in cases with [common] funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014); *see also Karic v. Major Auto. Cos.*, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (Pollack, M.J.) ("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund."). Indeed, courts in this Circuit "routinely" find such requests "well within the range of reasonableness." *Rosenfeld v. Lenich*, 2022 WL 2093028, at *3 (E.D.N.Y. Jan. 19, 2022); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021); *see also Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (affirming 33% fee from $15 million common fund in securities class action); *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21 (2d Cir. 2013) (affirming award of 33.3% from $9 million settlement in securities class action).

Accordingly, courts have frequently granted such a fee award in cases with comparable common funds where the settlement was reached during the pendency of a motion to dismiss, and/or where no or very limited discovery has been obtained as a result of the PSLRA discovery stay. *See 3D Sys.*, 2024 WL 50909, at *15 (33% of $4 million settlement); *Gong v. Neptune Wellness Solutions*, 2023 WL 6594352 at *2 (E.D.N.Y. July 18, 2023) (Lindsay, M.J.) (33% of

- 13 -

$4.25 million settlement), *aff'd*, 2023 WL 5793557 (E.D.N.Y. Sept. 7, 2023); *PPDAI Grp.*, 2022 WL 198491, at *15-16 (33% of $9 million settlement); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021);   *Burns*, 2014 WL 12917621, at *9 (33% of $4.9 million settlement); *see also, e.g.*, *In re Quidian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding 33% of $8.5 million settlement following decision on motion to dismiss but prior to formal discovery); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (Parker, M.J.) (awarding 33% of $7.5 million settlement after exchange of written discovery only); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2019 WL 5882171, at *1 (S.D.N.Y. Nov. 6, 2019) (awarding 33% of $6.5 million settlement entered before the filing of a motion to dismiss); *In re iDreamSky Tech. Ltd. Sec. Litig.*, 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (awarding 33% of $4.15 million settlement after decision on motion to dismiss but prior to formal discovery).

In addition, the requested fee is consistent with awards granted in other types of complex class actions within the Second Circuit. *See, e.g.*, *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y Jan 20, 2010) (Carter, Jr., M.J.) (awarding fees of 33% of $9.25 million settlement fund in FLSA case as "reasonable and 'consistent with the norms of class litigation in this circuit"); *Lyons v. Litton Loan Servicing LP*, No. 1:13-cv-00513-ALC-HBP, slip op. at 2 (S.D.N.Y Aug. 15, 2016.) (Carter, J.) (awarding 33.3% of $4.121 million settlement in a class action alleging claims regarding lender placed hazard insurance); *Flores v. Anjost Corp.*, 2014 WL 321831, at *8 (S.D.N.Y Jan. 29, 2014) (awarding fees of 1/3 of settlement amount in wage-and-hour case).

In sum, Co-Lead Counsel's request for attorneys' fees of one-third of the Settlement Amount is fully consistent with fee awards granted in comparable class actions in the Second Circuit.

### 5.    Public Policy Considerations Support the Requested Fee

Courts in this Circuit recognize that enforcing the federal securities laws through private

- 14 -

actions like this one serves the objective of protecting investors and the integrity of the market. *See 3D Sys.*, 2024 WL 50909, at \*15 ("In addition to obtaining relief for investors alleging violations of securities laws, courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis."); *see also Rodriguez*, 2023 WL 2184496, at \*14 ("[I]t is clear that there is important publicly policy that favors enforcement of the securities laws."). Indeed, the Supreme Court has repeatedly stated that private securities actions of this type provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to Commission [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Amgen Inc. v. Ct. Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013) (similar).

If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*29 (S.D.N.Y. Nov. 8, 2010). As a practical matter, "lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at \*18. Accordingly, "public policy favors the award of reasonable attorneys' fees in class action settlements." *Graña y Montero*, 2021 WL 4173684, at \*18 (citation omitted); *see also 3D Sys.*, 2024 WL 50909, at \*15 (same for 33% fee request); *PPDAI Grp.*, 2022 WL 198491, at \*16 (same for 33% fee request); *Burns*, 2014 WL 12917621, at \*10 (same for 33% fee request).

### C.    A Lodestar Cross-Check Confirms That the Requested Fee Is Reasonable

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against

counsel's lodestar. *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also PPDAI Grp.*, 2022 WL 198491, at \*14 ("Courts using the [POF] method . . . will also cross-check the percentage fee against counsel's lodestar amount of hourly rate multiplied by hours spent"). When doing so, the hours documented by counsel "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. Instead, the reasonableness of the lodestar amount can be "tested by the court's familiarity with the case." *Id.* Here, a lodestar cross check confirms the reasonableness of the requested fee award.

The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all timekeepers.[5] To date, Co-Lead Counsel (including attorneys and professional staff) devoted a total of 1,645.01 hours to the prosecution of this Litigation. *See* D'Aloia Decl. ¶ 6; Porritt Decl. ¶ 25. The resulting lodestar amount, derived by multiplying the hours billed by each timekeeper by their current hourly rates, is $1,092,221.25. *Id.* Based on a 33% fee award totaling $2,666,667, Co-Lead Counsel's lodestar yields a multiplier of 2.44.

This multiplier falls comfortably within the range of multipliers approved by courts within this Circuit, including in recent securities cases. *See Rodriguez*, 2023 WL 2184496, at \*13 ("courts have awarded lodestar multipliers of between 2 and 5 or more" in complex contingent litigation); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at \*8 (S.D.N.Y. Sept. 4, 2013) (in "cases with comparably swift results," courts award fees that yield "multipliers between four and five"); *see also, e.g.*, *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at \*8-9 (S.D.N.Y. Dec. 9, 2021) (fee with lodestar of 3.3 is "well within the range for securities actions"); *Graña y Montero*, 2021 WL 4173684, at \*18 (awarding fee with multiplier of 3.56); *Burns*, 2014 WL 12917621, at \*10

---

[5] The Supreme Court has held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

(awarding fee with multiplier of 4.75); *Comverse*, 2010 WL 2653354, at \*5 (awarding fee with a 2.78 multiplier). As other courts have explained, "a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *FLAG Telecom Holdings*, 2010 WL 4537550, at \*26; *see also Comverse*, 2010 WL 2653354, at \*5 (similar).

As noted above, the hourly rates used by Co-Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Courts in this District and Circuit have approved requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g.*, *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22 Civ. 2854 (JSR), ECF No. 110 (S.D.N.Y. Feb. 26, 2023); *In re Jumia Techs. S.A. Sec. Litig.*, Case No. 19 Civ. 4397 (PKC), ECF No. 128 (S.D.N.Y. Mar. 24, 2021); *Too v. Rockwell Med., Inc.*, 2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020) (Reyes, M.J.); *Pirnik v. Fiat Chrysler Autos. N.V.*, No. 15 Civ. 7199 (JMF), ECF No. 369 (S.D.N.Y. Sept. 5, 2019). Additionally, Co-Lead Counsel submit that these rates are comparable to, or less than, peer defense-side law firms litigating matters of similar magnitude.

Moreover, Co-Lead Counsel's legal work will not end with the Court's approval of the Settlement, but instead will include additional hours and resources assisting Settlement Class Members in obtaining their relief. In sum, the effort devoted to this case by Co-Lead Counsel to obtain the $8,000,000 recovery for the Settlement Class confirms that the requested fee is reasonable, whether calculated as a percentage of the fund or in relation to Co-Lead Counsel's lodestar.

### D.      The Fee Request Is Consistent With the Market Rate Negotiated by Plaintiffs

The Second Circuit has instructed  that courts should give "serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement" and, as such, "the agreed-upon fee will offer the best indication of a market rate." *In*

*re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008). Plaintiffs are sophisticated investors. Given their substantial financial interest in this case, they had every incentive to, and did, negotiate a fair and reasonable fee at the outset of their involvement. The fee requested by Co-Lead Counsel is consistent with the terms of the retainer agreement entered into between Plaintiffs and Co-Lead Counsel. *See* Ross Decl ¶ 6; Jolteus Decl. ¶ 7. This is "significant" for purposes of the fee request because the primary goal when awarding fees is "to approximate the prevailing market rate for counsel's services" and "an ex ante fee agreement is the best indication of the actual market value of counsel's services." *Comverse*, 2010 WL 2653354, at *4 (citations omitted). Beyond that, Plaintiffs further support the attorneys' fees requested in light of the work performed and results obtained since that time. *See* Ross Decl ¶ 6; Jolteus Decl. ¶ 7. This further supports the appropriateness of the fee request.

## IV.   CO-LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Co-Lead Counsel further request that the Court grant reimbursement for $91,076.19 in out-of-pocket litigation expenses that were incurred directly in connection with the prosecution of this Litigation, plus interest earned on that amount at the same rate and for the same period as that earned by the Settlement Fund. It is widely accepted that "[t]he court may award counsel reasonable out-of-pocket expenses that were necessary to successfully litigate and resolve the action." *3D Sys.*, 2024 WL 50909, at *16 (citation omitted). Indeed, "[c]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *Rodriguez*, 2023 WL 2184496, at *14 (citation omitted); *see also Gilat*, 2007 WL 2743675, at *18 ("Courts routinely grant the expense requests of class counsel.") (citation omitted).

As set forth in the accompanying Declarations of Justin D. D'Aloia and Nicholas I. Porritt, Co-Lead Counsel incurred a total of $91,076.19 in unreimbursed expenses to prosecute this Litigation. *See* D'Aloia Decl. ¶ 8; Porritt Decl. ¶ 26. These costs and charges arise from standard

expenses in the course of litigation, including those for (i) investigators; (ii) legal research; (iii) mediation fees; (iv) court filings; (v) postage; (vi) copying; (vii) and damages experts. *Id.* These are the type of expenses routinely approved in securities class actions. *MetLife*, 689 F. Supp. 2d at 362 (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses . . . filing fees" and "photocopying"); *see also PPDAI Grp.*, 2022 WL 198491, at *17 (granting reimbursement for expenses, the largest of which were for "outside investigators, financial consultants, and the mediator"); *Burns*, 2014 WL 12917621, at *11 (same for "online legal research, copying costs, postage, court filing fees . . . private investigator, and mediation fees"). As provided in the accompanying declarations, these expenses are reflected in Co-Lead Counsel's books and records and were necessary to prosecute this Litigation to resolution. *See* Pomerantz Decl. ¶ 7; Porritt Decl. ¶ 27.

The reaction of the class also supports the reasonableness of the expense request. In the Notice that was sent out to potential Settlement Class Members, Co-Lead Counsel indicated that they would seek reimbursement for out-of-pocket litigation expenses up to $250,000. The fact that there have been no objections to this amount—which is more than the expenses that Co-Lead Counsel now request—is further indicia that the expenses incurred are reasonable. *See Athale*, 2013 WL 11310686, at *9 (fact that there were "no objections" to higher expenses request in the notice indicates that the expenses actually incurred were reasonable).

## V.    THE AWARDS TO PLAINTIFFS SHOULD BE APPROVED

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an

incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (citation omitted); *see also Gilat*, 2007 WL 2743675, at *19 (same). Indeed, such awards are "common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *3D Sys.*, 2024 WL 50909, at *16.

Each of the Plaintiffs spent time and effort initiating and/or acting in a leadership capacity in this Litigation on behalf of the Settlement Class, including by monitoring news on the company, reviewing the pleadings, and communicating and corresponding with Co-Lead Counsel regarding the litigation and settlement. *See* Ross Decl. ¶ 4; Jolteus Decl. ¶ 4. These litigation efforts required representatives of Co-Lead Plaintiffs to dedicate time and resources to both Actions that they would have otherwise devoted to their regular duties. Ross Decl. ¶ 7; Jolteus Decl. ¶ 8. Accordingly, Plaintiffs respectfully request an award of $3,000 each, or $9,000 total, to reimburse them for the time they devoted to representing the interests of absent Settlement Class Members in connection with this Litigation. Such an award is "reasonable and appropriate relative to the … overall settlement." *MetLife*, 689 F. Supp. 2d at 370 (collecting cases); *see also PPDAI Grp.*, 2022 WL 198491, at *18 ($8,000 award for four named plaintiffs was "quite modest"); *Lea*, 2021 WL 5578665, at *13 (awarding $7,500 each to two lead plaintiffs).

## VI.    CONCLUSION

The efforts of Plaintiffs and Co-Lead Counsel have resulted in a very favorable result for the Settlement Class under the circumstances of this case. For all the foregoing reasons stated above and in the accompanying declarations, Plaintiffs and Co-Lead Counsel respectfully request that the Court award (i) attorneys' fees in the amount of 33% of the Settlement Amount ($2,666,666.67), plus interest at the same rate and for the same period as earned by the Settlement Fund; (ii) litigation expenses of $91,076.19, plus interest at the same rate and for the same period

as earned by the Settlement Fund; and (iii) award Plaintiffs $3,000 each for their service as lead plaintiffs. A proposed order will be submitted with Co-Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated: January 11, 2024

Respectfully submitted,

**POMERANTZ LLP**

 */s/* Justin D. D'Aloia
Jeremy A. Lieberman
Justin D. D'Aloia
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Lead Plaintiff Davian Holdings and Co-Lead Counsel for the Settlement Class*

**LEVI & KORSINSKY, LLP**

 /s/ Nicholas I. Porritt
Nicholas I. Porritt
Shannon Hopkins
Adam M. Apton
Max E. Weiss
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone:  (212) 363-7500
Facsimile:   (212) 363-7171
nporritt@zlk.com
shopkins@zlk.com
aapton@zlk.com
mweiss@zlk.com

*Counsel for Lead Plaintiffs Derson Jolteus and Edward Ko and Co-Lead Counsel for the Settlement Class*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Davian Holdings*

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

 /s/ Justin D'Aloia       
Justin D'Aloia
