UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                                      :

In re Nano-X Securities Litigation                  :

                                                                      :

**REPORT AND RECOMMENDATION**

21-CV-5517 (RPK) (PK)

------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       Co-Lead Plaintiffs Davian Holdings Limited ("Davian Holdings"), Derson Jolteus, and Edward Ko have filed an unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Final Approval Motion," Dkt. 77), which was referred to me by the Honorable Rachel P. Kovner for a Report and Recommendation. (Order Referring Motion dated January 19, 2024.) The Court previously granted the parties' Motion for Preliminary Approval of Class Action Settlement. ("Preliminary Approval Order," Dkt. 75.) For the reasons stated below, I respectfully recommend that the Final Approval Motion be granted.

## BACKGROUND AND PROCEDURAL HISTORY

       This action alleges violations of federal securities laws against Nano-X Imaging Ltd. ("Nano-X"), its Chief Executive Officer Ran Poliakine, and its Chief Financial Officer Itzhak Maayan (collectively, "Defendants") on behalf of a Settlement Class consisting of all persons and entities who purchased or otherwise acquired Nano-X securities between August 21, 2020 and November 17, 2021, inclusive. (Am. Compl. ¶ 1, Dkt. 24; Preliminary Approval Order at 3.) The parties negotiated and executed a proposed settlement agreement with a total payment amount of $8 million. (*See* "Settlement Agreement" ¶ 1.41, Dkt. 67-1.)

On October 31, 2023, the Court preliminarily approved the parties' proposed class settlement, finding that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. (Preliminary Approval Order at 1.) The Preliminary Approval Order certified a class for settlement purposes only ("Settlement Class"), preliminarily appointed Davian Holdings, Jolteus, and Ko as class representatives ("Co-Lead Plaintiffs"), and preliminarily appointed Pomerantz LLP and Levi & Korsinsky, LLP as class counsel ("Co-Lead Counsel"). (*Id.* at 9.) The Court also approved the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Hearing ("Notice," Dkt. 72-3) and Proof of Claim and Release Form ("Claim Form," Dkt. 72-5 and, together with the Notice, the "Notice Packet"). (Preliminary Approval Order at 12.) The Court authorized Epiq Class Action & Claim Solutions, Inc. ("Epiq") to act as the claims administrator for the class settlement and issue the Notice Packet to Settlement Class members. (*Id.* at 25.)

On January 11, 2024, Co-Lead Plaintiffs filed the Final Approval Motion, attaching the following supporting documentation: a memorandum of law in support of the Final Approval Motion ("Final Approval Mem.," Dkt. 79), attorney declarations from Co-Lead Counsel ("D'Aloia Decl.," Dkt. 81; "Porritt Decl.," Dkt. 82), and a declaration by a representative of Epiq. ("Blow Decl.," Dkt. 81-1.) The declaration submitted by Epiq confirmed that the proposed notice program had been carried out pursuant to the Preliminary Approval Order. (*Id.*)

Concurrently with the filing of the Final Approval Motion, Co-Lead Counsel filed an application for attorneys' fees and expenses ("Fees Motion," Dkt. 78) and memorandum of law in support of the requested fees. ("Fees Mem.," Dkt. 80.)

The Final Approval Motion and Fees Motion (together, the "Motions") seek entry of a final judgment and order approving the proposed $8 million class-wide settlement, awarding attorneys' fees

2

in the amount of $2,666,666.67 and expenses in the amount of $91,076.19, plus accrued interest, and awarding each Co-Lead Plaintiff $3,000.00 for their service as representatives of the Settlement Class.

On February 8, 2024, Co-Lead Plaintiffs filed a Notice of Non-Opposition and Reply in further support of the Motions (Dkt. 86) and supporting documentation. (*See* "D'Aloia Suppl. Decl.," Dkt. 87; "Blow Suppl. Decl.," Dkt. 87-1.)[1]  As of February 8, 2024, Epiq had distributed 77,880 Notice Packets, received five requests for exclusion, and received no objections. (*Id.* ¶¶ 4, 5, 7.)

The Final Approval Motion is unopposed, and Defendants do not object to the requests for attorneys' fees, costs, or service payments. The Court held a final settlement approval hearing on February 15, 2024. No Settlement Class member objected to the settlement at or before the hearing. Following the hearing and by order of the Court, the parties filed a joint status report on February 28, 2024 to update the Court with the final total numbers of Notice Packets distributed, valid claims submitted, and opt-outs received. (Dkt. 88.) As of February 28, 2024, Epiq had distributed 80,706 Notice Packets and received five requests for exclusion and no objections. ("Second Suppl. Blow Decl." ¶¶ 4, 6, 7, Dkt. 88-1.) Epiq stated it had received a total of approximately 26,000 Claim Forms, 50 of which were received after the deadline of February 19, 2024, and all of which were still subject to review. (*Id.* ¶ 8.)

## FINDINGS AND RECOMMENDATIONS

Having considered the Final Approval Motion, the supporting declarations, the arguments presented at the February 15, 2024 hearing, and the complete record in this matter, I make the following findings and recommendations:

1. Following the distribution of the Notice Packet to the potential Settlement Class, and now having had an opportunity to consider the Settlement Class's reaction to the proposed settlement, I

---

[1] On January 30, 2024, the Court was informed that Defendant Ran Poliakine had, unfortunately, passed away. (Dkt. 85.)

3

respectfully recommend that the Court grant final approval of the proposed class action settlement and the Settlement Agreement, "so order" all of its terms, and incorporate by reference the definitions in the Settlement Agreement, and all exhibits, addendums, stipulations, and schedules thereto.

2. The Settlement Agreement provides that, in exchange for payment of a Settlement Amount of $8,000,000, the Settlement Class shall release "any and all claims, demands, losses, rights, and causes of action of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law, by Released Plaintiff Parties, whether brought directly or indirectly against any of the Released Defendant Parties, that have been or could have been asserted in the Litigation or could in the future be asserted in any forum, whether foreign or domestic, and which: (a) relate to any of the allegations, transactions, events, disclosures, statements, acts, or omissions that were asserted, involved, set forth, asserted, or referred to, or could have been asserted, by a Released Plaintiff Party in the Litigation; or (b) arise out of, are based upon, or relate in any way, directly or indirectly, to the purchase, acquisition, holding, sale, disposition, or ownership of Nano-X securities during the Settlement Class Period." (*Id.* ¶¶ 1.38, 1.41.) The Settlement Agreement also provides that the Settlement Amount, plus all interests and accretions (the "Settlement Fund") (*id.* ¶ 1.45), will be used to pay taxes, notice and settlement administration expenses, attorneys' fees and expenses, any awards to lead plaintiffs, and any other fees, payments, or awards approved by the Court. (*Id.* ¶ 2.7.)

3. As previously addressed by the Court when it granted preliminary certification of the Settlement Class, I find that the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Procedure 23(a), and the predominance and superiority requirements of Rule 23(b)(3), have been met, warranting class certification for purposes of effectuating settlement. (*See* Preliminary Approval Order at 20.)

4. Accordingly, I respectfully recommend that the Court grant final certification to the following Settlement Class for settlement purposes pursuant to Rule 23(e): "all Persons and entities who purchased or otherwise acquired Nano-X securities during the Settlement Class Period and who were damaged thereby." (*See* Settlement Agreement ¶ 1.42.) The "Settlement Class Period" is defined as the period between August 21, 2020 and November 17, 2021, inclusive. (*Id.* ¶ 1.44.) The Settlement Class excludes: (i) Defendants; (ii) the parent entity, officers, and directors of Nano-X, at all relevant times; (iii) members of the immediate families of such officers and directors of Nano-X, and their legal representatives, heirs, successors or assigns; and (iv) any entity in which Defendants have or had a direct or indirect controlling interest. Also excluded from the Settlement Class is any Settlement Class member that validly and timely requested exclusion in accordance with the requirements set by the Court. (*Id.* ¶ 1.42.) I respectfully recommend that the valid and timely requests for exclusion by Zejun Xiao, Zhenmei Liu, Michelle Xiao, Neven Borak, and Milisav Borak be granted, such that they are excluded from the Settlement Class. (*See* Exhibit A to Suppl. Blow Decl.)

5. In preliminarily approving the Settlement Agreement, the Court previously considered the requirements of Fed. R. Civ. P. 23(e)(2), weighed the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974), and found that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. (Preliminary Approval Order at 15.)

6. I now find that Co-Lead Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class pursuant to Rule 23(e)(2)(A), the settlement was reached through arm's-length negotiations between experienced counsel pursuant to Rule 23(e)(2)(B), the relief was adequate for the Settlement Class pursuant to Rule 23(e)(2)(C), and the Settlement Class members were treated equitably relative to each other pursuant to Rule 23(e)(2)(D).

7. I also find that the remaining *Grinnell* factors—the stage of the proceedings and the amount of discovery completed, the ability of the Defendants to withstand a greater judgment, the range of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation—weigh in favor of final approval.

8. The only factor the Court could not address in the Preliminary Approval Order was the reaction of the class to the settlement. (Preliminary Approval Order at 14.) With respect to that factor, the response to the settlement has been positive. As of February 28, 2024, the claims administrator, Epiq, had distributed approximately 80,706 Notice Packets, and approximately 26,000 Claim Forms were submitted. (Second Suppl. Blow Decl. ¶¶ 4, 8.) Although the Claim Forms are still pending review by Epiq, a prospective participation rate of 32% is above a typical range of class action settlement participation rates. *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 n.8 (citing 2 McLaughlin on Class Actions § 6:24 (8th ed.) and observing that class action settlements based on claims submission "typically have a participation rate in the 10–15 percent range.")

9. No Settlement Class member objected to the settlement, and only five members requested to opt out of the Class. (Suppl. Blow Decl. ¶ 6; Second Suppl. Blow Decl. ¶¶ 6–7.) Thus, the reaction of the class to the settlement also weighs in favor of final approval of the Settlement Agreement.

10. Accordingly, because the Rule 23(e)(2) and *Grinnell* factors all weigh in favor of approval, I respectfully recommend that the Court approve the proposed settlement as fair, reasonable, and adequate.

11. I find that sufficient notice of the proposed settlement was given, pursuant to Rule 23(e)(1), to bind all Settlement Class members. The claims administrator distributed the Notice Packet pursuant to the notice program preliminarily approved by the Court, including by mail to

6

nominees and beneficial purchasers, publication of the Summary Notice over *PR Newswire*, publication of the Notice Packet on the settlement website www.NanoXSettlement.com, and use of a toll-free phone number with pre-recorded information about the settlement. (Preliminary Approval Order at 22; Blow Decl. ¶¶ 3–14.) I find that the Notice and Claim Form were the best notice practicable to allow Settlement Class members a full and fair opportunity to consider the proposed settlement and develop a response, and that the distribution of the Notice and Claim Form was the best reasonable method to reach all Settlement Class members who would be bound by the Settlement Agreement.

12. The Court previously appointed Pomerantz LLP and Levi & Korsinsky, LLP as Co-Lead Counsel (Preliminary Approval Order at 9), and I now find that Pomerantz LLP and Levi & Korsinsky, LLP have satisfied the requirements of Rule 23(a)(4) and fairly and adequately protected the interests of the Settlement Class in this action.

13. Co-Lead Counsel have extensive experience in securities class action litigation and were, therefore, well equipped to have negotiated a fair settlement for the Settlement Class. (Fees Mem. at 11–12.) I respectfully recommend that the Court grant Co-Lead Plaintiffs' request for attorneys' fees and costs, and award Class Counsel $2,666,666.67 in attorneys' fees, reflecting approximately 33% of the Settlement Amount, plus $91,076.19 for litigation expenses, plus interest earned on that amount at the same rate and for the same period as that earned by the Settlement Fund. (*See id.* at 4.) I find that this award of a percentage of the Settlement Amount is reasonable. The requested award of attorneys' fees represents a multiplier of 2.47 based on the contemporaneous billing records submitted by Co-Lead Counsel. (*See* Dkts. 89-1, 89-2.) The fee award is justified by the work that Co-Lead Counsel did conducting the litigation, negotiating the settlement, achieving the ultimate recovery, and by the risk that Co-Lead Counsel undertook in bringing the claims.

14. I find the service award of $9,000.00 to Co-Lead Plaintiffs, in the amount of $3,000.00 each to Davian Holdings, Jolteus, and Ko, to be reasonable.

15. Therefore, for good cause shown, I respectfully recommend that the Court enter a final judgment and order granting final approval of the settlement as memorialized in the Settlement Agreement, approving the proposed $8 million class-wide settlement, awarding attorneys' fees in the amount of $2,666,666.67 and expenses in the amount of $91,076.19, plus accrued interest, and awarding each Co-Lead Plaintiff $3,000.00 for their service as representatives of the Settlement Class. I further recommend that this action be dismissed with prejudice and that the Court retain jurisdiction over the case until all installments have been paid by Defendants as provided for in the Settlement Agreement.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         April 17, 2024